Lyman H. Smith, J.
Petitioner Bryant is joined in this article
78 proceeding by intervenor petitioners McKnight, Powlen, Sanks and Summers, all recipients of Federal aid to families with dependent children assistance under title IV of the Social Security Act (U. S. Code, tit. 42, § 601 et seq.) and title 10 of the Social Services Law ,(§ 343 et seq.). Together, they challenge separate, but similar, determinations made by respondent Reed (Director of the Monroe County Department of Social Services) and affirmed, post fair hearings, by respondent Lavine (Commissioner of the New York State Department of Social Services).
These determinations dealt with special cash allowances (for the purpose of preventing or restoring utility cutoffs). In each instance the allowances were granted to the petitioners over and above their regular monthly public assistance grants. In each instance it was held that such additional assistance fell within the provisions of State regulations (18 NYCRR 352.7 [g] [5])[1] permitting local recoupment of such allowances.
Petitioners urge, however, that such relief falls under the purview of Federal and State “emergency assistance ” provisions (U. S. 'Code, tit. 42, § 606, subd. [e], par. [1]; Social Services Law, § 350-j).
Additionally, petitioners contend that respondents’ policy of making subsequent deductions from their regular monthly assistance grants (in order to recoup these special allowances) constitutes a violation of the afore-mentioned Federal and State statutorial provisions. They urge this court to declare invalid and unenforceable this practice.
*427 By order of this court, dated August 23, 1974, petitioners McKnight, Powlen, Sanks and Summers were permitted to intervene in this action because of the common question of law raised, under virtually identical circumstances, by the policy of the local and State agencies dealing with utility shutoffs. Thereby, the necessary grounds appeared by which the court could then exercise its discretion in permitting such intervention (CPLB 1013; 7802, subd. [d]).
The salient facts upon which the original petitioner, Bryant, predicates her claim appear as follows [2]:
Unable to make payments on her utility charges for the months of September through December, 1973 due to prearranged (and unchallenged) reductions from her regular monthly public assistance grants, petitioner Bryant accumulated a $77.66 utility arrearage and received notification in early January, 1974 that her utilities would be terminated unless payment could be made on such arrearages forthwith. Carrying sole responsibility for support of her infant son and burdened in late December, 1973 with the additional and continuing responsibility of a female cousin (with two infant children)[3] in her residence, petitioner failed in her attempts to raise funds sufficient to satisfy the accumulating utility arrearages. Consequently, the threatened utility cutoff occurred on January 20, 1974.
On the following day, petitioner Bryant sought and received from the local agency a special grant equal to the sum of the arrearages. Utility services were restored on January 23,1974. Thereafter, on February 15* 1974 petitioner received notice from respondent Reed directing recoupment of the special grant ($77.66) in three successive monthly deductions from her regular assistance grants. Petitioner, in a fair hearing, challenged the recoupment order, claiming she was eligible to receive “emergency assistance” and, as such, could not have her subsequent monthly grants deducted or reduced for the purpose of recouping such special relief. Respondent Lavine affirmed the local action (March 30, 1974), as he did to each petitioner ■herein, and ordered the contested recoupments to be made.
The initial question here is the legitimacy of respondent Lavine’s determination that the special relief extended to the petitioners herein was an “advance allowance” under State *428 regulations (18 NYCRR 352.7 [g] [5]) which thereby precluded - petitioners from receiving such relief as “ emergency assistance ” under Federal and State 'statutes (U. S. Code, tit. 42, § 606, subd. [e], par. [1]; Social Services Law, § 350-j).
The qualifications entitling a public assistance recipient to receive “emergency assistance ” relief are set forth in the Social Security Act (U. S. Code, tit'. 42, § 606, subd. [e], par. [1]), its concomitant regulations (Code of Fed. Reg., tit. 45, § 233. 120, subd. [bj) and section 350-j of,[1] the Social Services Law).
These provisions are consistent -in specifying the requirements one must meet to be eligible for. ‘ ‘ emergency assistance ’ ’: (1) There must be a “ needy child without resources ” in the household; (2) the assistance must be necessary to. “ avoid destitution of such child or provide living arrangements ”' for it; and (3) such need must not result from a refusal on the part of the child or of his relatives “ to accept employment or training ” without cause. .There are no other qualifications.
No serious attempt has been made by respondents to show that any of these necessary condition^ have not been adequately established by the petitioners. The resultant destitution of living during the winter months without heat, cooking facilities and electricity.— even for a day — deserves no comment.
Respondents, however, rely on State regulations which provide for withholding “ emergency assistance ” where the destitution arises from the recipient’s “diversion” of a former public assistance grant (18 NYCRR 372.2 [c] )[4].
-As above indicated, nothing in the Federal or State statutes, j providing for “ emergency assistance ” payments, requires compliance with any additional conditions or standards. Nor are there any restrictions therein contained which, in any way, limit or inhibit such relief, as respondents now argue. . In fact, our courts have been quick to reject any attempt by State and local agencies to further qualify or limit offerings of “ emergency assistance ” by adopting ^regulations which would impose new or additional requirements and qualifications (see Matter of Bates v. Wyman, 36 A D 2d 854; Matter of Nazario v. New York City Comr. of Social Serv., 37 A D 2d 630; Matter of Knudsen v. Nassau County Dept. of Social Servs., 77 Misc 2d 402; Matter of Preston v. Barbaro, 61 Misc 2d 327) and have specifically ruled invalid the instant regulation advanced by *429 respondents conditioning “emergency assistance” on a showing that destitution did not arise from ‘ ‘ loss, theft or diversion of a grant already made ” (18 NYCRR 372.2 [c]). (See Baumes v. Lavine, 74 Misc 2d 1046; Young v. Shuart, 67 Misc 2d 689, affd. 39 A D 2d 724; and Matter of Lawson v. Shuart, 67 Misc 2d 98.)
The regulation here in question (18 NYCRR 372.2 [c]) is in direct conflict with Federal and State legislative enactments (U. iS. ¡Code, tit. 42, § 606, subd. [e], par. [1]; Social Services Law, § 350-j) in its attempt to create additional criteria for the receipt of “ emergency assistance ”. It reaches beyond the Federal and State statutes. It is unenforceable. As such, it is inoperative and is no bar to petitioners’ receipt of their special allowances as “ emergency assistance ”. Such assistance is specifically available to prevent or restore utility shutoffs under subdivision (a) of .section 372.4 of the Regulations of the State Department of Social Services (18 NYCRR 372.4 [a]). (See Summers v. Wyman, 64 Misc 2d
Also rejected is respondents’ contention that such relief cannot be treated as “ emergency assistance” because it constitutes a duplication of assistance already made for the payment of utility charges, as part of petitioners’ monthly grants. However, ,it is uniquely clear in the situation here that the payments furnished to restore utilities in petitioners’ households were made to avert and terminate crises situations created by insufficiencies in the recipients’ former grants. Such relief did not amount to a duplication of payments already made (Matter of Borders v. Nassau County Dept. of Social Servs., 34 A D 2d 805).
Finally, it must be determined whether respondents are justified in recouping these special payments by taking subsequent deductions from petitioners’ regular public assistance grants. They are not.
Having held, de facto and de jure, that the special relief provided to the petitioners, under the circumstances here, fall squarely ¡within both the Federal and State .“ emergency assistance ” provisions, which do not provide for recoupment or recapture of payments made pursuant thereto, it follows that respondents’ reliance on the. State recoupment regulation (18 NYCRR 352.7 [g] [5]) is misplaced. The recoupment regulation is inapplicable here. Should this court sanction the use of the State recoupment regulation in the instant situation, it would permit respondents to accomplish indirectly that which they are not allowed to accomplish directly .
*430 In passing, it is noted that should this court hold that the special relief[1] here extended to each petitioner constitutes an “ overpayment ” liable to recoupment by respondents (pursuant to State regulation 18 NYCBB 352.7 [g] [5]), which it does not, then such recoupments would be subject to Federal regulations applicable to reimbursements for overpayments made. (See Matter of Knudsen v. Department of Social Servs., 77 Misc 2d 402, supra; Matter of Nasser v. Lavine, 76 Misc 2d 46; Matter of Muniz v. Lavine, 75 Misc 2d 426.)
In this regard, it is significant that, effective July 10, 1974 new Federal regulations (Code of Fed. Beg., tit. 45, § 233.20, subd. [a], par. 12, cl. [i], subcl. [a]) preclude subsequent reimbursements for over payments ‘ ‘ Unless the recipient has income or resources exclusive of the current assistance payment currently available in the amount by which the agency proposes to reduce payments ”. The predecessor to this new regulation[5] permitted the States to reduce regular monthly grants without the need of ascertaining whether the recipient had additional income or resources, but with the provision that the States *[1] shall establish reasonable limits on the proportion of such payments as may be deducted, so as not to cause undue hardship on recipients.” (Code of Fed. Beg., tit. 45, § 233.20, subd. [a], par. 12, cl. [i], subcl. [d], eff. October 15, 1973.)
Employing either the new or old ¡Federal regulatory standards to the controversies presented herein, it is clear that respondents’ present efforts to recoup the special allowances granted to petitioners (by taking subsequent deductions from their regular assistance grants) violated petitioners’ Federal rights. Ample evidence revealed that each petitioner had no independent source of income or resources, other than their regular monthly grants, from which these deductions could be satisfied. It is equally clear that such deductions would create insurmountable hardships in their respective households.
Accordingly, respondents are directed to return to petitioners, within 20 days of their receipt of the order herein, all sums heretofore deducted from petitioners’ monthly assistance grants for the purpose of recouping the “ emergency assistance” allowances granted to prevent or restore tiieir utility shutoffs.

. Section 352.7 (subd. [g], par. [5]) of the Regulations of the State Department of 'Social Services (18 NYCRR 352.7 [g] [5]) provides: "For a recipient of public assistance, an advance allowancé may be provided to pay for utilities already furnished in the same dwelling in which he resides and for which a grant has been previously issued, to prevent a shut-off or to restore services, up to but not exceeding a four month period immediately preceding the advanee payment. Such advance payments shall thereafter be deducted from subsequent grants in equal amounts over not more than the next six months, During such six month period and thereafter, the grants for utilities may be made by restricted payment.”

. The factual histories giving rise to intervener petitioners’ claims have been held to be substantially similar to that of Bryant’s in all relevant respects and Will not require further elaboration herein.

. These relatives were also without resources or income and due to Bryant’s efforts, received court-ordered public assistance begining in late January, 1974.

. Under the circumstances presented here, any finding that petitioners somehow “ diverted;” their monthly public assistance monies and,' in 'effect, brought upon themselves utility shutoffs would be speculative' at best, guésswork at worst, and totally unwarranted.

. The former regulation was ruled to be violative of the provisions of the Social Security Act by United States District Judge John H. Pratt in National Welfare Bights Organization v. Weinberger (377 F. Supp. 861).