Viola **WILLIAMS** et al.

v.

Helene **WOHLGEMUTH** et al.

**Civ. A. No. 74–3162.**

United States District Court,
E. D. Pennsylvania.

Aug. 22, 1975.

Stephen F. Gold, Philadelphia, Pa., for plaintiffs.

Howard Holmes, Asst. Atty. Gen., Dept. of Justice, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

BRODERICK, District Judge.

In this action the plaintiffs challenge the validity of § 6170, Appendix III of the Regulations of the Pennsylvania Department of Public Welfare [1] which provides emergency assistance payments to needy recipients for special needs resulting only from civil disorders or natural disasters. The plaintiffs contend that § 6170, Appendix III violates the Social Security Act, 42 U.S.C. §§ 603(a)(5) and 606(e) and federal regulation 45 C. F.R. § 233.120. The plaintiffs also contend that § 6170, Appendix III is violative of due process and equal protection. The plaintiffs seek injunctive and declaratory relief.

1. The Pennsylvania Department of Public Welfare regulations are compiled in the De-partment of Public Welfare Manual which is known as the "Pennsylvania Manual".

*Factual Background.*

On December 11, 1974, plaintiffs filed their complaint invoking jurisdiction under 28 U.S.C. § 1343(3) and (4) and seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202 and 42 U.S.C. § 1983. On that same day, this Court ordered, pursuant to Rule 65(a)(2) F.R.Civ.P., a consolidated hearing on the motion for a preliminary injunction and a hearing on the merits. The Court ordered further that the parties submit Findings of Fact and Conclusions of Law. The hearing having been held and after due consideration of the briefs and evidence presented at the hearing, the Court has determined that the relief requested by the plaintiffs must be granted.

The essential facts in this case are undisputed. The original plaintiffs herein were Mrs. Viola Williams and the Philadelphia Welfare Rights Organization. Mrs. Williams and her child receive Aid to Families with Dependent Children ["AFDC"]. During a period commencing in 1972 and continuing until December 4, 1974, Mrs. Williams accumulated an electric bill of $456.53. On December 4, 1974, the Philadelphia Electric Company terminated all electric service to Mrs. Williams. Mrs. Williams sought and was denied emergency assistance to pay her electric bill in order to have her electric service restored. However, in reviewing the record of payments which she had received from the Department of Welfare, it was determined that an administrative error had been made as to payments which she had received and on or about December 17, 1974, she received an additional lump sum payment from the Pennsylvania Department of Public Welfare in the amount of $627.-50. This lump sum payment was more than sufficient to pay her past due electric bill thereby obviating the immediate need of Mrs. Williams. On the day before the hearing commenced, a motion to intervene was filed on behalf of additional named plaintiffs, Geraldine Little, Mary Witt, Beatrice Carmona and Esther Saez.[2] At the time of the hearing, the parties agreed that if these intervening plaintiffs were to testify, their testimony would be the same as that contained in their affidavits submitted with their motion to intervene. It is sufficient for our purpose to state that these four intervening plaintiffs are all AFDC welfare recipients who have found themselves in emergency situations and who, except for Mrs. Witt, sought assistance from the Department of Public Welfare and were denied relief. The situations presented by the intervening plaintiffs can be summarized as follows: Mrs. Witt, Mrs. Carmona and Mrs. Saez are all mothers who qualify for AFDC assistance. They all received notice of eviction from their respective landlords and were unable to obtain other dwellings for themselves and their children because they could not afford the security deposits required. Mrs. Little and her children are also AFDC recipients. She had an outstanding water bill which she could not pay.

Although some of the situations presented by the plaintiffs have been remedied as a result of aid from other sources, this action is not moot because it is clear that the issue presented is of public importance "capable of repetition, yet evading review". *United States v. W. T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *Groff v. Wohlgemuth*, 328 F.Supp. 1016 (E.D.Pa.1971); *Adens v. Sailer*, 312 F.Supp. 923 (E.D.Pa.1970). The occurrences presented by these plaintiffs are "capable of repetition".[3]

2. Since no opposition has been forthcoming from the defendants regarding the motion to intervene and since the motion meets the requirements of Rule 24(b) F.R.Civ.P., the Court properly exercises its discretion in permitting this intervention.

3. Mrs. Myrna Brown, Director of Operations of the Philadelphia County Board of Assistance, has stated in her deposition that such situations as have befallen plaintiffs occur frequently. (Brown Deposition at 22–23).

*Jurisdiction.*

The plaintiffs have brought this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3) and (4). Plaintiffs contend that § 6170, Appendix III of the Pennsylvania Manual violates the equal protection and due process clauses of the Fourteenth Amendment. Additionally, plaintiffs contend that § 6170, Appendix III is inconsistent with the federal Social Security Act and the federal regulations promulgated thereunder, and is therefore invalid by virtue of the Supremacy Clause of the United States Constitution.

█ A consideration of the merits of the plaintiffs' constitutional claim requires the convening of a three-judge court. Plaintiffs' statutory Supremacy Clause claim, however, should be decided by the single-judge district court provided there is jurisdiction. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Doe v. Beal*, 523 F.2d 611 (3d Cir. 1975).

Our Third Circuit in *Doe v. Beal, supra,* set forth the procedure to be followed by a district court judge in these cases:

> In *Hagans v. Lavine, supra,* 415 U.S. at 543–44, 94 S.Ct. 1372 the Supreme Court pointed out that a single district judge can grant both declaratory and injunctive relief on statutory grounds in a case such as this, using this language (415 U.S. 543, 94 S.Ct. 1372):
>
> > "Given a constitutional question over which the District Court has jurisdiction, it also had jurisdiction over the 'statutory' claim. See *supra,* at 536, 94 S.Ct. 1372. The latter was to be decided first and the former not reached if the statutory claim was dispositive. [Citing cases.] The constitutional claim could be adjudicated only by a three-judge court, but the statutory claim was within the jurisdiction of a single

district judge. [Citing cases.] Thus, the District Judge, sitting alone, moved directly to the statutory claim. His decision was appealed to the Court of Appeals, although had a three-judge court been convened, an injunction issued, and the statutory ground alone decided, the appeal would be only to this Court under 28 U.S.C. § 1253."

> The court went on to state at 543–45, 94 S.Ct. 1372:
>
> > "The procedure followed by the District Court—initial determination of substantiality and then adjudication of the 'statutory' claim without convening a three-judge court— . . . accurately reflects the recent evolution of three-judge court jurisprudence . . .
> >
> > "It is true that the constitutional claim would warrant convening a three-judge court and that if a single judge rejects the statutory claim, a three-judge court must be called to consider the constitutional issue. Nevertheless, the coincidence of a constitutional and statutory claim should not automatically require a single-judge district court to defer to a three-judge panel, which, in view of what we have said in *Rosado v. Wyman, supra,* [397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442] could then merely pass the statutory claim back to the single judge. [Citing cases.] 'In fact, it would be grossly inefficient to send a three-judge court a claim which will only be sent immediately back. This inefficiency is especially apparent if the single judge's decision resolves the case, for there is then no need to convene the three judge court.' [Citing case.] Section 2281 does not forbid this practice, and we are not inclined to read that statute 'in isolation with mutilating literalness . . . .' "

We have quoted the foregoing because we hold at this time that the majority opinion in *Murrow v. Clif-*

*ford,* 502 F.2d 1066 (3d Cir. 1974), will not be followed insofar as it is inconsistent with (a) part II of *Hagans v. Lavine, supra,* and (b) this opinion. (Footnote omitted).

The single-judge district court must first determine whether the plaintiff's constitutional claim is "of sufficient substance to support federal jurisdiction" under 28 U.S.C. § 1343. *Hagans v. Lavine, supra* at 536, 94 S.Ct. at 1378. In the event the single-judge district court determines that the complaint has raised a constitutional claim of sufficient substance to support federal jurisdiction, he must then determine, as a matter of pendent jurisdiction, the claim of conflict between the federal and the state law.[4] If the single-judge district court rejects the plaintiff's statutory Supremacy Clause claim, then and only then must a three-judge court be convened to consider the plaintiff's constitutional claim. *See also, McLaughlin v. Wohlgemuth,* 398 F.Supp. 269 (E.D.Pa. 1975).

The complaint herein alleges a deprivation, under color of state law, of the plaintiffs' constitutional rights. The plaintiffs contend that § 6170, Appendix III violates the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. Specifically, it is asserted that Pennsylvania Department of Public Welfare Regulation § 6170, Appendix III has created an invidious classification which is irrational and serves no legitimate public interest, in that it creates a class of recipients composed of those whose destitution is caused by civil disorder or natural disaster and ignores all those whose destitution is caused by some other emergency. Plaintiffs contend that these classifications treat similarly situated people differently and therefore constitute a deprivation of equal protection. In addition, the plaintiffs contend that the defendants have created a conclusive and irrebuttable presumption that only people who suffer a civil disorder or a natural disaster are in need of emergency assistance and that this violates due process.

In *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), AFDC recipients challenged the Maryland maximum grant regulation on equal protection grounds. The Supreme Court held that the issue should be resolved by inquiring whether the classification had a rational basis. Finding that it did, the Supreme Court sustained the regulation. In *Hagans v. Lavine, supra* 415 U.S. at 539, 94 S.Ct. at 138, the Supreme Court admonished that "*Dandridge* evinced no intention to suspend the operation of the Equal Protection Clause in the field of social welfare law" and that "State laws and regulations must still 'be rationally based and free from invidious discrimination.'" We are unaware of any cases in the Supreme Court dealing with this constitutional issue which have settled the matter one way or the other.[5] It is not obvious to us from the face of the complaint that providing emergency assistance payments to eligible recipients only when they encounter a civil disorder or natural disaster is so patently rational as to require no meaningful consideration. Thus, it is the determination of this Court that the plaintiffs' claim of violation of equal protection raises a constitutional claim of sufficient substance to support federal jurisdiction and, accordingly, federal jurisdiction is properly invoked under 28 U.S.C. § 1343. The Court's determination that federal jurisdiction exists is not a disposition of the plaintiffs' constitutional claim since

---

4. Whether or not other valid grounds exist for sustaining federal jurisdiction to entertain and decide the statutory Supremacy Clause claim aside from the pendent jurisdiction rationale is a question of which the Supreme Court has said "we leave for another day." *Hagans v. Lavine,* 415 U.S. 528, 533 n. 5, 93 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

5. *See Burrell v. Norton,* 381 F.Supp. 339 (D.Conn.1974).

such a disposition is exclusively within the province of a three-judge court. We must, however, proceed now to consider the plaintiffs' pendent claim that the Pennsylvania regulation is inconsistent with applicable federal law.

### Certification of the Class.

The plaintiffs have made a timely motion, which is unopposed by the defendants, to certify this case as a class action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. The proposed class would consist of "all citizens and bona fide residents of the Commonwealth of Pennsylvania who are recipients of Aid to Families with Dependent Children, who require emergency assistance pursuant to 42 U.S.C. §§ 603(a)(5) and 606(e), and whose need for emergency assistance in addition to their regular assistance grants was beyond their control and the granting of emergency assistance will avoid destitution, but who will in the future be denied the emergency assistance." There being no opposition from the defendants and it appearing that the plaintiffs have met the requirements of Rule 23(a) and 23(b)(2), this case shall proceed as a class action in accordance with the above definition of the class.

### Statutory Challenge.

The plaintiffs attack the Pennsylvania Emergency Assistance program as promulgated in § 6170, Appendix III of the Pennsylvania Manual on the ground that only special needs resulting from civil disorders and natural disasters entitle them to relief and they contend that 42 U.S.C. §§ 603(a)(5) and 606(e) and federal regulation 45 C.F.R. § 233.120 require that emergency assistance be provided to all eligible recipients when they encounter an emergency in order to "avoid destitution".

Under the "Payments to States" section of the AFDC provisions of the Social Security Act, Congress provided in 42 U.S.C. § 603(a)(5):

(a) From the sums appropriated therefor, the Secretary of the Treasury shall . . . pay to each State which has an approved plan for aid and services to needy families with children . . . .—

\* \* \* \* \* \*

(5) in the case of any State, an amount equal to 50 per centum of the total amount expended under the State plan during such quarter as emergency assistance to needy families with children.

The definition of "emergency assistance to needy families with children" is provided in 42 U.S.C. § 606(e) as follows:

(e)(1) The term "emergency assistance to needy families with children" means any of the following, furnished for a period not in excess of 30 days in any 12-month period, in the case of a needy child under the age of 21 who is (or, within such period as may be specified by the Secretary, has been), living with any of the relatives specified in subsection (a)(1) of this section in a place of residence maintained by one or more of such relatives as his or their own home, but only where such child is without available resources, the payments, care, or services involved are necessary to avoid destitution of such child or to provide living arrangements in a home for such child, and such destitution or need for living arrangements did not arise because such child or relative refused without good cause to accept employment or training for employment—

(A) money payments, payments in kind, or such other payments as the State agency may specify with respect to, or medical care or any other type of remedial care recognized under State law on behalf of, such child or any other member of the household in which he is living, and

(B) such services as may be specified by the Secretary;

but only with respect to a State whose State plan approved under section 602

of this title includes provision for such assistance.

(2) Emergency assistance as authorized under paragraph (1) may be provided under the conditions specified in such paragraph to migrant workers with families in the State or in such part or parts thereof as the State shall designate.

Federal regulation 45 C.F.R. § 233.-120(a), promulgated pursuant to 42 U.S.C. § 606(e), provides:

(a) *Requirements for State plans.* A State plan under Title IV, Part A, of the Social Security Act, providing for emergency assistance to needy families with children must:

(1) Specify the eligibility conditions imposed for the receipt of emergency assistance. These conditions may be more liberal than those applicable to other parts of the plan. (See paragraph (b)(1) of this section for scope of Federal financial participation.)

(2) Specify if migrant workers with families will be included and, if emergency assistance will not be available to them Statewide, the part or parts of the State in which it will be provided.

(3) Specify the emergency needs that will be met, whether mass feeding or clothing distribution are included, and the methods of providing payments, medical care, and other remedial care.

(4) Specify which of the following services will be provided: Information, referral, counseling, securing family shelter, child care, legal services, and any other services that meet needs attributable to the emergency or unusual crisis situations.

(5) Provide that emergency assistance will be given forthwith.

Plaintiffs argue that the regulation of the Pennsylvania Department of Public Welfare as set forth in § 6170, Appendix III of the Pennsylvania Manual, by limiting emergency assistance to needs arising from civil disorders or natural disasters, establishes standards which are more restrictive than the federal standards set forth in 42 U.S.C. § 606(e) and federal regulation 45 C.F.R. § 233.120. The plaintiffs also argue that § 6710, Appendix III is inconsistent with the Congressional purpose of 42 U.S.C. § 606(e) which is to aid families with needy children so as to avoid destitution of such children. The plaintiffs contend that the state regulation here involved has excluded situations which were intended to be covered by the emergency assistance provisions of the Social Security Act. The plaintiffs conclude that a state plan for emergency assistance must provide assistance in those emergency situations beyond the control of the individual in order to avoid destitution of such children. The plaintiffs do not contend, however, that the state is without discretion in the area of emergency assistance. Plaintiffs agree that under 42 U.S.C. § 606(e) a state has the discretion as to whether or not it will adopt an emergency assistance program. Plaintiffs also agree that a state has discretion as to the type of assistance it will provide, such as "money payments, payments in kind, or such other payments as the State agency may specify". 42 U.S.C. § 606(e)(1)(A). Plaintiffs contend, however, that when a state adopts an emergency assistance program it cannot limit its program by limiting it to certain emergencies. The plaintiffs bottom their argument on *Carleson v. Remillard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). The defendants, on the other hand, argue that the state has discretion with regard to the kinds of emergencies covered by the state's emergency assistance program and that Pennsylvania has opted to provide emergency assistance only in the event of civil disorder and natural disaster.

The issue presented is whether Pennsylvania's emergency assistance regulation § 6170, Appendix III, Pennsylvania Manual, is in conflict with 42 U.S.C. §§ 603(a)(5) and § 606(e) of the Social Security Act and federal regulation 45 C.F.R. § 233.120, in that it limits emergency assistance to special needs resulting from civil disorders or natural disasters.[6]

The United States Congress established the first federally financed welfare program in 1935. Aid to Families with Dependent Children is one of the several major categorical public assistance programs established by the Social Security Act of 1935. AFDC is financed by the federal government, on a matching fund basis, and is administered by the states. States are not required to participate in the AFDC program but those which desire to take advantage of the substantial federal funds available for distribution are required to submit and AFDC plan for the approval of the Secretary of Health, Education and Welfare (HEW). 42 U.S.C. §§ 601, 602, 603 and 604. The state plan must conform with the requirements of the Social Security Act and with the rules and regulations promulgated by HEW.

Congressional concern with meeting the emergency needs of children who were destitute and without available resources as a result of a crisis led to the passage of the "emergency assistance" program as one of the 1967 Amendments to the Social Security Act and as an ad-

---

**6.** Cases interpreting 42 U.S.C. § 606(e) are few at present:

In *Purnell v. Edelman*, 365 F.Supp. 499 (N.D.Ill.1973) aff'd 511 F.2d 1248 (7th Cir. 1975), the district court found that the state's refusal to authorize emergency assistance under the state plan which covered termination of utility service until after utility service was terminated, constituted a violation of § 606(e) and 45 C.F.R. § 233.120(a)(5). In affirming, the Circuit Court said: "the federal program is not designed merely to cure destitution that has already occurred. Its purpose is to *avoid* destitution." 511 F.2d 1251.

In *Mandley v. Trainor*, C.A. No. 73C2453 (N.D.Ill. filed Nov. 21, 1974), the court, in holding that a victim of a robbery was not entitled to emergency assistance, stated that § 606(e) and federal regulation 45 C.F.R. § 233.120 did not require the Illinois emergency assistance program to provide assistance in all emergency situations. In *Baxter v. Minter*, 378 F.Supp. 1213 (D.Mass.1974), the court upheld the state emergency assistance program which restricted emergency assistance eligibility to those persons who receive, or could receive, either AFDC benefits or general welfare. It was contended that the state plan was not as broad in coverage as § 606(e). The court said that the emergency assistance plan was intended to provide aid to needy families with children in order to avoid destitution, but found no conflict between the state regulation and the federal standard on the ground that Congress intended the states to apply their own precise standard of need when describing the poverty line of eligibility.

In *Adens v. Sailer*, 312 F.Supp. 923 (E.D. Pa.1970), the court held that an HEW regulation requiring emergency assistance be given "forthwith" forbade Pennsylvania's use of a centralized mailing procedure for emergency assistance checks which resulted in delays of one to two weeks in receipt of the checks.

In *Bryant v. Lavine*, 79 Misc.2d 425, 359 N.Y.S.2d 492 (1974), the court held that the New York Department of Public Welfare could not recoup from welfare grants payments made pursuant to a state plan which provided for emergency assistance in connection with utility cutoffs. The court stated that: "Nothing in the Federal (42 U.S.C. § 606(e)) or State statutes, providing for 'emergency assistance' payments, requires compliance with any additional conditions or standards."

In *Boyd v. Department of Institution and Agencies*, 126 N.J.Super. 273, 314 A.2d 79 (1974), the court held that a claim for emergency assistance to pay utility bills was properly denied under the New Jersey plan which required that the emergency be one for which the applicant had no advance opportunity to plan. The court said: "We do not read the federal statute as attempting an exclusive definition of the term 'emergency' for all situations under which emergency assistance may be provided. Rather we think the New Jersey regulation refines the term according to its general common sense understanding." 126 N.J.Super. at 274, 314 A.2d at 80.

junct of the AFDC program. 42 U.S.C. § 606(e). The "emergency assistance" plan was accomplished by adding subsection (e) to the definitional section of the AFDC provisions of the Social Security Act. 42 U.S.C. § 606(e), which was added to the Social Security Act in 1967, defines "emergency assistance to needy families with children", as heretofore quoted.

The adoption of an emergency assistance plan by a state was made optional. A state which opts to adopt the emergency assistance program may do so by including a provision for it in the state AFDC plan. Pennsylvania opted to participate in the federal emergency assistance program and promulgated regulation § 6170, Appendix III of the Pennsylvania Manual in November of 1969, as amended in June of 1972. This regulation provides emergency assistance to eligible recipients only in the event of a civil disorder or natural disaster for the immediate and temporary needs of (a) assistance recipients; (b) persons who meet the needy condition for public assistance but who have not previously applied; (c) persons who ordinarily have sufficient income or resources but are currently destitute because their resources are not immediately available.[7] The Pennsylvania emergency assistance plan provides no emergency relief for the emergencies confronted by the plaintiffs in this case because their emergencies are not the result of a civil disorder or a natural disaster.[8]

The starting point for our statutory analysis of the Social Security Act and the state welfare regulation in question is the special rule of construction established by the Supreme Court as applicable to Social Security provisions governing AFDC eligibility. The Supreme Court stated in *Townsend v. Swank*, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L. Ed.2d 448 (1971):

> Thus, *King v. Smith* [392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968)] establishes that, at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance, under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause.

The Supreme Court recently reiterated the above quoted rule in *Burns v. Alcala*, 420 U.S. 575, 580, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1975):

> *King, Townsend,* and *Carleson* establish only that once the federal standard of eligibility is defined, a participating State may not deny aid to persons who come within it in the absence of a clear indication that Congress meant the coverage to be optional.

As stated in *King v. Smith*, 392 U.S. 309, 318–19, 88 S.Ct. 2128, 2134, 20 L.

7. As originally promulgated in 1969, regulation 6170, Appendix III, provided for emergency assistance for special needs resulting from "destructive and disruptive civil disorders." With the advent of Hurricane Agnes in 1972 and the resultant floods, § 6170, Appendix III was amended to include "major disasters, and later described in a transmittal letter to HEW as a "natural disaster." The testimony at the hearing makes clear that § 6170, Appendix III as amended in 1972 provides emergency assistance to those eligible only in the event of a civil disorder or a natural disaster.

8. Pennsylvania does, however, have provisions for an "emergency fund" at the County Board level from which the Department of Public Welfare provides for certain emergencies. For example, when a welfare recipient dies and must be buried, DPW pays for the burial since welfare recipients are not expected to pay for burials out of the regular welfare grants. Similarly, when a welfare recipient is evicted, the Department of Public Welfare will pay the moving expense. These "extra" welfare payments are over and above the regular monthly grants and come from the "emergency fund". The requirements for payment of extra grants to welfare recipients are set forth in other sections of the Pennsylvania Manual and are unrelated to the emergency assistance plan of § 6170, Appendix III.

Ed.2d 1118 (1968), the Supreme Court made it clear, however, that:

> There is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program. [Footnotes omitted].

See also *Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *VanLare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974).

■ Furthermore, our Third Circuit in *Doe v. Beal, supra,* at p. 615, summarises the rule as follows:

> *King* and [*Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970)] demonstrate that, although the AFDC program is a "scheme of cooperative federalism" . . . it is not a scheme of unlimited state discretion. Instead, Congress defined an area of state prerogative, the boundaries of which are defined by the congressional policies—both explicit and implicit—found in the Social Security Act. (Footnote omitted).

Cases such as *King, Townsend* and *Carleson* make it clear that the states do not have the discretion to limit the reach of the federal definition of a "dependent child" contained in 42 U.S.C. § 606(a) of the AFDC provisions of the Social Security Act. These cases are authority for the proposition that the definition contained in § 606(a) is mandatory. A state may not exclude anyone within the coverage of the Social Security Act definition.[9]

■ The emergency assistance program is contained in the AFDC section of the Social Security Act. The term "emergency assistance to needy families with children" which is defined in § 606(e) specifically refers to the definition of "dependent children" in 42 U.S. C. § 606(a)(1). As heretofore pointed out, a state which opts to adopt the emergency assistance program may do so by including a provision for it in the state's AFDC plan, which meets the requirements of 42 U.S.C. § 602. One of the requirements of § 602 as set forth in subsection 602(a)(10) is that "a State plan . . . must . . . provide . . . that aid to families with dependent children shall be furnished with reasonable promptness to *all eligible individuals.*" (Emphasis added). Furthermore, HEW regulation 45 C.F.R. § 206.10(5) provides:

> Financial assistance and medical care and services included in the plan shall be furnished promptly to eligible individuals without any delay attributable to the agency's administrative process, and shall be continued regularly to all eligible individuals until they are found to be ineligible. Under this requirement there must be arrangements to assist applicants and recipients in obtaining medical care and services in emergency situations on a 24-hour basis, 7 days a week.

In *Baxter v. Minter,* 378 F.Supp. 1213 (D.Mass.1974), the court points out that such cases as *King, Townsend* and *Carleson* are relevant to any examination of the emergency assistance program due to the close statutory relationship of the two programs. As the court has stated at page 1220:

> Both AFDC and EA [emergency assistance] are designed to aid needy

---

9. The Court in *Carleson, Townsend* and *King* was called upon to determine the scope of 42 U.S.C. § 606(a) which defines "dependent child". The individual states in those cases had promulgated regulations which restricted the definition of "dependent child". The Court in these three cases noted that

42 U.S.C. § 602 requires that state plans meet certain requirements one of which is § 602(a)(10) which provides in part, "(a) A State plan . . . must . . . provide . . . that aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals."

families with children under a certain age. The enabling legislation for EA is in fact found in the AFDC definitions section of the United States Code, 42 U.S.C. § 606. The term "emergency assistance to needy families with children" is defined by reference to the more detailed definition sections of the AFDC law. See 42 U.S.C. § 606(e); 42 U.S.C. § 606(a)(1). The emergency assistance program is part and parcel of the AFDC program. There is no reason why it should not be subject to the same rules of construction which the Supreme Court has determined to be applicable to AFDC provisions.[10] We find no legally significant difference between defining who is eligible as a "dependent child" under 42 U.S.C. § 606(a), as construed by the Supreme Court in *Townsend v. Swank, supra,* and who is eligible for emergency assistance under 42 U.S.C. § 606(e). In both instances, a state must comply with the federal minimum standard which Congress established. Accordingly, we view the provisions of 42 U.S.C. § 606(e)(1) as mandatory for a state which opts to participate in the emergency assistance program. We are persuaded that the explicit language of the statute and its legislative history support the conclusion that financial assistance for the emergency assistance program is available only to states which

conform to the federal eligibility standards.

■ Section 606(e) is explicit. Emergency assistance is available only to the following children:

where [the] child is without available resources, [and] the payments, care, and services involved are necessary to avoid destitution of such child or to provide living arrangements in a home for such child, and such destitution or need for living arrangements did not arise because such child or relative refused without good cause to accept employment.

HEW regulations promulgated in 45 C. F.R. § 233.120(b) specifically reiterates the requirements of 42 U.S.C. § 606(e) as follows:[11]

(1) Federal financial participation is available for emergency assistance to or on behalf of a needy child under the age of 21 and any other member of the household in which he is living if—

(i) Such child is (or, within 6 months prior to the month in which such assistance is requested, has been) living with any of the relatives specified in section 406(a)(1) of the Act in a place of residence maintained by one or more of such relatives as his or their own home,

10. With regard to the emergency assistance program, one commentator has stated: "In light of Supreme Court decisions [*King, Townsend* and *Carleson*] severely restricting the rights of states to narrow Congressional eligibility requirements, the states will probably be given little flexibility." A. La-France, *Law of the Poor* 295 (1973). Another commentator has stated: "The doctrine that § 406(a) [§ 606(a)] definitions are mandatory upon the states is the indispensable ingredient necessary to establish a viable basis for making the Emergency Assistance Program a meaningful one. Although it must be acknowledged that establishment of the *program* is optional with the state, and that the state has 'undisputed power to set the level of benefits and the standard of need,' *King v. Smith* . . . and to determine what services will be pro-

vided . . . and whether migrant families will be covered . . . once a state has undertaken to provide emergency assistance and to take advantage of the substantial federal funds available, then the program must become part of an approved state plan subject to the mandatory definitional provisions in § 406(a) of the Act and to the congressional intent in establishing the program." Weiss, *Emergency Assistance Under the AFDC Program,* 4 Clearinghouse Review 120, 122–23 (1970).

11. The testimony of Richard Gilbert, an Assistance Payments Program Specialist from HEW, may be interpreted as supporting the defendants' contention that a state may limit its emergency assistance to special needs resulting from civil disorders or natural disasters.

(ii) Such child is without resources immediately accessible to meet his needs,

(iii) The emergency assistance is necessary to avoid destitution of such child or to provide living arrangements for him in a home, and

(iv) His destitution or need for living arrangements did not arise because he or such relative refused without good cause to accept employment or training for employment.

Section 606(e) of the Act, as well as the HEW regulations, in defining "emergency assistance to needy families with children", in no way limits emergency assistance to special needs resulting from a civil disorder or a natural disaster. The criteria specified in the Act and the regulations are that the child is: (1) Without available resources; (2) The payments, care and services involved are necessary to avoid destitution or provide living arrangements in a home for such child; and (3) That such destitution or need for living arrangements did not arise because such child or relative refused without good cause to accept employment.[12]

The only options written into § 606(e) are (a) the states have the option of participating in the emergency assistance program; (b) the states may specify the types of assistance they will provide; and (c) the states have the option of including migrant workers with families in their emergency assistance program. This particularization in the statute of the area of state discretion is itself cogent evidence that Congress did not intend to authorize the states to limit eligibility to children who were victims of civil disorders or natural disasters. There is nothing in § 606(e) which indicates that the states have lati-

tude in determining the categories of emergency situations to be covered. On the contrary, the fact that § 606(e) and the applicable federal regulations use permissive language in some instances, strengthens the view that a state does not have the discretion to limit the coverage of its emergency assistance program to civil disorders or natural disasters, once it has opted to participate in the emergency assistance program.

The provisions of § 606(e) are designed to channel the state's program in a direction consistent with the intent of Congress to provide emergency aid up to 30 days to families with needy children who would otherwise face destitution. *Baxter v. Minter*, 378 F.Supp. 1213 (D. Mass.1974); *Purnell v. Edelman*, 511 F.2d 1248 (7th Cir. 1975). The reports of the House Ways and Means Committee and the Senate Finance Committee are particularly instructive as to the intent of Congress in enacting the emergency assistance program. These reports (1967 U.S.Code Cong., & Admin. News pp. 2838, 3002) provide in part as follows:

> Finally, a new program optional with the States would authorize dollar-for-dollar Federal matching to provide temporary assistance to meet the great variety of situations faced by needy children in families with emergencies.

> \* \* \* \* \* \*

> The Committee understands that the process of determining AFDC eligibility and authorizing payments frequently precludes the meeting of emergency needs when a crisis occurs. In the event of eviction, or when utilities are turned off, or when an alcoholic parent leaves children without food, immediate action is necessary. It frequently is unavailable under State programs today.

---

12. Professor LaFrance has observed that states may "have some leeway in defining 'destitution' and an emergency need for 'living arrangements' as long as the definitions do not detract from the natural meaning of these words. Such decisions are akin to defining standards of need where the states traditionally have great discretion." A. *LaFrance, supra,* note 10 at 296.

\* \* \* \* \* \*

The eligible families involved are those with children under 21 who either are, or have recently been, living with close relatives. The families do not have to be receiving, or eligible upon application to receive, AFDC (although they are generally of the same type), but they must be without any available resources and the payment or service must be necessary in order to meet an immediate need that would not otherwise be met.

Assistance might be in any form—money, medical aid, payment of rent or utilities, orders from food or clothing stores, etc. The provision is broad enough that emergencies can be met in migrant families as well as those meeting residence requirements of the State's AFDC program. Its utilization would be optional with the States.

\* \* \* \* \* \*

The committee recognizes that the bill would require the States to take on new and expensive tasks. Yet, if the job is to be done—if the number of families on AFDC is to be kept to the minimum—these new activities must begin in earnest. The Federal Government, which is the main financial support for the program, must be assured that the States carry out the intent of the Congress when taking on the new and expanded functions which will be required of them.

Comments made in the floor debate in the Senate on the emergency assistance provisions are also illuminating:

Families with emergency trouble will be able to receive emergency assistance in whatever form it is best for them at their time of need. Families which have been burned out, suffered personal tragedies, and such will be able to get money, medical care, shelter provided, food sent in, or whatever else is needed to deal with the crisis. The committees are to be commended for adding this provision, thus recognizing that emergencies which strike families cannot be delt [sic] with by business-as-usual methods.

113 Cong.Rec. 36925 (1967) (Remarks of Senator Mansfield).

There is nothing in the above quoted history which supports the defendants' argument that states have discretion with regard to the types of emergency situations which it may cover in its emergency assistance program.[13] On the contrary, the legislative history does show that Congress intended to provide emergency assistance for children without available resources where the emergency aid is necessary to avoid destitution. The legislative history leads to the conclusion that Congress did not intend to grant an option for a state to limit the coverage of its emergency assistance program to civil disorders and natural disasters.

 A state's interest in preserving the fiscal integrity of its welfare program cannot be furthered by the device of restricting the class of children eligible by the Social Security Act. *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). That interest may be protected by the state's "undisputed power to set the level of benefits." *King v. Smith*, 392 U.S. 309, 334, 88 S.Ct. 2128, 2142, 20 L.Ed.2d 1118 (1968).

Accordingly, the following Order is entered:

## ORDER

And now, this 22nd day of August, 1975, it is ordered that,

1. Section 6170, Appendix III of the Regulations of the Pennsylvania Depart-

13. See *Weiss, supra,* note 10 at page 122 where it is stated: "In the emergency assistance program the legislative intent, as set forth in the committee report . . . provides a sound basis for extending coverage to fact situations comparable or analogous to those Congress was explicitly concerned with."

ment of Public Welfare is hereby declared invalid under the Supremacy Clause of the United States Constitution.

2. The defendant, Helene Wohlgemuth, her successors in office, her agents, employees, delegates, and other persons acting in concert and participating with them, are hereby enjoined from enforcing and implementing § 6170, Appendix III of the Regulations of the Pennsylvania Department of Welfare insofar as § 6170 limits emergency assistance to special needs resulting from civil disorders and natural disasters.