Mary Lou BAXTER, on her own behalf and on behalf of her four minor children; and on behalf of all others similarly situated, Plaintiffs,

v.

Steven A. MINTER, Commissioner of the Massachusetts Department of Public Welfare, et al., Defendants.

Civ. A. No. 74-79-T.

United States District Court, D. Massachusetts.

July 19, 1974.

Charles R. Capace, R. Peter Anderson, Boston, Mass., Mass. Law Reform Institute, for plaintiffs.

Danielle DeBenedictis, Nicholas Arenella, Asst. Attys. Gen., Boston, Mass., for defendants.

## OPINION

TAURO, District Judge.

The plaintiff [1] brings this civil rights action and a pendent Supremacy Clause claim against two state officials and the Department of Public Welfare, requesting that this court declare invalid certain of the defendants' eligibility requirements for the Emergency Assistance Program (EA), and that defendants be enjoined from enforcing such requirements.

Jurisdiction is pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The plaintiff challenges the defendants' eligibility requirements as being violative of the Equal Protection and Supremacy Clauses of the United States Constitution.

EA is an aid program intended to offer, on a short term basis, financial and other assistance to families facing a crisis. The plaintiff contends that all persons eligible under broad federal requirements should be eligible for this relief. The Commonwealth, on the other hand, seeks to restrict EA eligibility to those persons who receive, or could receive upon application, either Aid to Families with Dependent Children (AFDC) or General Relief (GR).

### Facts

On or about November 2, 1973, the plaintiff applied for EA at the Chelsea Welfare Service Office in order to pay a two month rent arrearage and a back oil bill. Her husband has a weekly income of $105.00, but this money is consumed by living expenses and monthly loan payments. The husband's poor health forces him to miss work occasionally, with a resultant decrease in take home pay.

The Chelsea Welfare Service Office refused the plaintiff any EA payments on the grounds that the family is not eligible for Aid to Families with Dependent Children (AFDC) or General Relief (GR) because her family income was above the AFDC and GR standards of need.

At the time of hearing on plaintiff's request for a temporary restraining order, she faced eviction for nonpayment of rent, and her heating fuel tank was almost empty. By agreement of counsel, no decision was rendered by the court with respect to the TRO, and arrangements were made by the defendants to provide the plaintiff with a tank of fuel. The latter was done without prejudice to the legal positions now proferred by the defendants.

### Class Action

The plaintiff sued on her own behalf, on behalf of her four minor children, and on behalf of all others similarly situated. The Complaint alleges that a class of persons does exist which would qualify under Federal Rule 23. The plaintiff did not move for a hearing to certify the class, but rather agreed to a merged hearing on a preliminary injunction and the merits based on an agreed statement of facts. The plaintiff did not press for formal certification of the class, nor did she seek discovery to assist her in establishing the existence of a class. See, e. g., Yaffee v. Powers, 454 F.2d 1362 (1 Cir. 1972).

█ The plaintiff must do more than to merely allege the existence of a class in her Complaint. She bears the burden of establishing that her action satisfies the requirements of Rule 23. Rossin v. Southern Union Gas Co., 472 F.2d 707, 712 (10 Cir. 1973); Demarco v. Edens, 390 F.2d 836 (2 Cir. 1968); Glodgett v. Betit, 368 F.Supp. 211, 214 (D.Vt.1973).

█ The court, therefore, must determine from the Stipulation of Facts and Documents whether plaintiff has shown sufficient facts to warrant the certification of a class. The only reference in the stipulated facts that could possibly be considered as a definition of a class

---

1. The court will for the sake of simplicity refer to Mary Lou Baxter as the individual plaintiff. In addition, she sues on behalf of her four minor children and as representative of an alleged class.

is as follows: "According to the Department of Community Affairs satistics there are approximately 78,849 families with children in Massachusetts who earn less than $7000 gross per year but receive no financial assistance from the AFDC or GR programs."

There is no evidence that any members of the alleged statistical family group ever applied for EA, or that any or all of them would be eligible for EA but for the defendants' challenged regulations.

On the basis of the existing record, therefore, the court determines that the plaintiff has failed to adequately identify a class, or demonstrate that the composition of the asserted class is so vast as to make joinder impracticable. Fed.R.Civ. P. 23(a)(1). The request for designation of a class is denied. See Glodgett v. Betit, 368 F.Supp. 211 (D.Vt.1973). McAdory v. Scientific Research Instruments, Inc., 355 F.Supp. 468 (D.Md. 1973).

### Jurisdiction

■ Plaintiff pleads federal question jurisdiction, which requires that more than $10,000 exclusive of interest and costs be in controversy. 28 U.S.C. §

1331. Mindful that the plaintiff and her family can be eligible for Emergency Assistance only 30 days out of every year, 42 U.S.C. § 606(e),[2] the court cannot find that the present discounted value of future payments and indirect loss of property rights exceeds $10,000.[3] See Randall v. Goldmark, 495 F.2d 356 (1 Cir. 1974).

■ Plaintiff alternatively asserts jurisdiction for the § 1983 claim pursuant to 28 U.S.C. § 1343. As stated, the plaintiff not only raises an equal protection claim respecting defendants' eligibility standards, but also presents a pendent federal statutory claim which may be dispositive of the case. See Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). Faced with such a pendent statutory claim, the court has, as a threshold issue, the question of whether plaintiff has pleaded a substantial equal protection claim; i. e., whether or not previous decisions inescapably render the plaintiff's claim frivolous. Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

Plaintiff maintains that defendants' practice creates two classes of needy families,[4] and that the distinction be-

2. "The term 'emergency assistance to needy families with children' means any of the following, furnished for a period not in excess of 30 days in any 12-month period, in the case of a needy child under the age of 21 who is (or, within such period as may be specified by the Secretary, has been) living with any of the relatives specified in subsection (a)(1) of this section in a place of residence maintained by one or more of such relatives as his or their own home, but only where such child is without available resources, the payments, care, or services involved are necessary to avoid destitution of such child or to provide living arrangements in a home for such child, and such destitution or need for living arrangements did not arise because such child or relative refused without good cause to accept employment or training for employment—"
42 U.S.C. § 606(e).

3. Cases where the court considered a common interest of the class when discussing the $10,000 requirement, Bass v. Rockefeller, 331 F.Supp. 945 (S.D.N.Y.), complaint dismissed as moot, 464 F.2d 1300 (2 Cir.

1971); New Jersey Welfare Rights Organization v. Cahill, 483 F.2d 723, 725 n. 2 (3 Cir. 1973); United Low Income, Inc. v. Fisher, 470 F.2d 1074, 1075 n. 1 (1 Cir. 1972) are not apposite in light of the denial of class certification.

4. The plaintiff insists that the defendants' practice of granting aid to some but not all persons eligible under federal criteria creates two classes of needy families with children. "First, there are those AFDC or GR families and those eligible upon application who are faced with an emergency and have no available resources to prevent destitution. This class of families receives Emergency Assistance from the defendants in accordance with State Letter 241. Secondly, there are those other needy families with children not presently receiving AFDC or GR and not eligible upon application who likewise face an emergency and have no available resources to prevent destitution." (Plaintiff's Memorandum in Support of Temporary Restraining Order p. 12).
The latter category is denied eligibility for EA aid by the defendants.

tween the two groups is "irrational in light of the purposes of 42 U.S.C. § 606(e), all in violation of the Equal Protection Clause of the Fourteenth Amendment." Complaint, p. 6. Cf. U. S. D. A. v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 796 (1973). Plaintiff's contentions and the defendants' eligibility standards are to be judged by the standard of review set forth in Dandridge v. Williams:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (citations omitted).

It is clear that the purpose of EA, 42 U.S.C. § 606(e), is to provide emergency aid for up to thirty (30) days to families with needy children who would otherwise face destitution. What is not clear is just what constitutes "need" or "destitution" in terms of the statutory mandate. Unfortunately, the legislative history is of little assistance as a guide to the intent of Congress with respect to these terms.[5]

The Department of Health, Education and Welfare (HEW) is the implementing agency for EA. HEW regulations grant discretion to the States with respect to the setting of eligibility standards. EA is closely related to AFDC, another HEW program. It is clear that with respect to AFDC the States "are given broad discretion in determining both the standard of need and the level of benefits." Shea v. Vialpando, 416 U. S. 251, 253, 94 S.Ct. 1746, 1750, 40 L. Ed.2d 120 (1974). The question presents itself as to whether or not States have the same broad discretion in setting standards of need and levels of payment in their implementation of EA.

Given the latitude that States have in setting AFDC need and payment levels, and the similarity in purpose and scope of the EA and AFDC legislation, the court has no choice but to find that the States must be afforded the same latitude in setting EA need and payment standards.

*Dandridge,* therefore, forecloses any serious equal protection claim when the court faces a statutory scheme as similar to AFDC as the present one. When a poverty line is drawn, someone is bound to be left out. While there may be legitimate disagreement as to where that line should be drawn, it cannot be said that the Commonwealth had no rational basis for utilizing the same standard of need that it already had adopted for the AFDC program. The Commonwealth made a public policy determination whose purpose was to ensure that available public assistance funds reached those with the greatest need. Cf. Jefferson v. Hackney, 406 U.S. 535, 549, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

While the court notes that the Supreme Court set a very low standard of substantiality for jurisdictional purposes, Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the First Circuit has a restrictive view of the Hagans case which we are bound to follow. See Randall v. Goldmark, 495 F.2d 356 (1 Cir. 1974).

The court, therefore, finds the plaintiff's equal protection claim to be insubstantial.

### Statutory Claim

Even assuming the plaintiff's equal protection contentions are sufficient for jurisdictional purposes, the court finds no merit in plaintiff's pendent statutory claim.

The plaintiff claims that she meets the federal requirements of EA. The defendants say the plaintiff is ineligible

5. See discussion of legislative history in text, infra, p. 1218.

and, in doing so, maintain that they are following eligibility guidelines suggested by HEW. Defendants claim further that the applicable HEW regulation allows the States to set their own eligibility standards, including the standard of need.

▇▇ As stated, EA is intended to provide aid to needy families with children, in order to avoid destitution. 42 U.S.C. § 606(e). The terms "needy" and "destitution" were not defined by Congress and so no explicit statutory standard is available for guidance. A court can infer, therefore, that Congress used general terms in the statute when describing the poverty line of eligibility because it intended the States to supply their own precise standard of need. Such an inference is supported as well by other methods of statutory construction, including an analysis of relevant legislative history.[6]

That portion of legislative history most favorable to the plaintiff's view reads as follows:

The families do not have to be receiving, or eligible upon application to receive, AFDC (although they are generally of the same type), but they

must be without any available resources and the payment or service must be necessary in order to meet an immediate need that would not otherwise be met.

S.Rep.No.744, 90th Cong., 1st Sess., 1967 Cong. & Admin.News p. 3003.

▇ The plaintiff argues that this language indicates a Congressional intent to establish a federal standard of need at least above the AFDC level. The court determines, however, that the legislative history reflects Congressional intent that EA eligibility requirements be broader than those of AFDC,[7] regardless of where a State sets its *standard of need*, implicitly preserving to the States discretion with respect to EA standards of need that *King* recognized in the AFDC legislation. The view is shared by various legal writers who have considered the subject. Weiss, *Emergency Assistance Under the AFDC Program*, 4 Clearinghouse Law Review 120, 123 (1970); A. LaFrance, et al. Law of the Poor 296 (1973).[8]

The plaintiff extrapolates from comments made during floor debate on the bill in the Senate,[9] and a section of the Senate Report,[10] an intent by Congress

---

6. When a statute's terms do not satisfactorily reveal the law's meaning a court can turn to relevant legislative history for possible guidance. United States v. Donruss Co., 393 U.S. 297, 303, 89 S.Ct. 501, 21 L.Ed.2d 495 (1969).

7. A child is not required to be presently living with close relatives in order for the family to receive EA, as the child often must be if the family is to receive AFDC benefits. See 42 U.S.C. § 606(a). Families otherwise ineligible for AFDC are presently eligible for EA.

   In Massachusetts, for example, those families eligible for General Relief are eligible for Emergency Assistance whether or not they are eligible for AFDC. State Letter 241.

8. See Purnell v. Edelman, 365 F.Supp. 499 (N.D.Ill.1973), which stands for the proposition that States have discretion in establishing what constitutes "destitution," but, once that standard is set, those eligible must be provided with relief "forthwith."

9. Now, Mr. President, I should like to refer to another new provision in this measure. For the first time, the Federal Government will match money for emergency assistance. This has not been in the law before. For a period of 30 days, emergency assistance can be paid in cases where they cannot meet other qualifications. Many of the States have asked for this provision, and it is one that should be looked at by those who say they will reject this bill because it is not liberal. It would do many of the things for which States, welfare directors, and others have been asking for a long time.

   113 Cong.Rec. 36319 (1967) (remarks of Senator Curtis).

10. (k) Summary—The committee recognizes that the bill would require the States to take on new and expensive tasks. Yet, if the job is to be done—if the number of families on AFDC is to be kept to the minimum—these new activities must begin in earnest. The Federal Government, which

that EA be used to aid families above the poverty line of eligibility for welfare programs in order to keep them off the regular welfare rolls. Clearly, the legislative history does demonstrate an intent to afford prompt aid to victims of sudden disasters.[11] But equally apparent is that this legislative response was prompted not by a concern for those ineligible for welfare, but rather out of concern for the eligible person who was not receiving aid, only because of the inordinate amount of time it sometimes takes for that first assistance check to reach the intended recipient.[12] Adens v. Sailer, 312 F.Supp. 923, 927 (E.D.Pa. 1970); see also Copeland v. Saucier, 475 F.2d 1127, 1129 n. 1 (5 Cir. 1973).

In a situation where the statute and its legislative history offer so little guidance, the interpretation of the federal *agency responsible for administering* EA carries great weight. See N.Y. Dept. of Social Services v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). At oral argument, defendants' counsel represented that HEW recommended to the Commonwealth that it employ the AFDC and GR eligibility standards in determining EA eligibility.

HEW regulations require the States to specify eligibility standards in their plans:

(a) *Requirements for State Plans.*

A State plan under Title IV, Part A, of the Social Security Act, providing for emergency assistance to needy families with children must:

(1) Specify the eligibility conditions imposed for the receipt of emergency assistance. These conditions may be .more liberal than those applicable to other parts of the plan. (See paragraph (b)(1) of this section for scope of Federal financial participation.)

45 C.F.R. § 233.120(a)(1). Plaintiff maintains that the HEW regulation language ". . . [the] conditions may be more liberal than those applicable to other parts of the plan," 45 C.F.R. § 233.120(a)(1), is nothing more than a gratuitous observation by HEW that an individual State's EA requirements *may well be* more liberal than those employed in its other welfare programs. The defendants, on the other hand, construe this language to mean that a State *could* make EA eligibility standards more liberal than other State programs *if it chose to do so*. In other words, the defendants construe this language to be an implicit reaffirmation of the State's prerogative to set its own standard of need.

The defendants' interpretation is the more reasonable one. In addition, the

---

is the main financial support for the program, must be assured that the States carry out the intent of the Congress when taking on the new and expanded functions which will be required of them.

The bill provides adequate Federal financial support for these expended functions. It is estimated that by July 1, 1972, a cumulative 5-year total of $2,735 million will have been spent by the Federal Government on these functions. At the same time it is estimated that the new provisions will mean that fewer children will be receiving aid in that year than if the law were continued in its present form. S.Rep.No.744, 90th Cong., 1st Sess., 1967 Cong. & Admin.News pp. 3003–04.

11. Families with emergency trouble will be able to receive emergency assistance in whatever form it is best for them at their

time of need. Families which have been burned out, suffered personal tragedies, and such will be able to get money, medical care, shelter provided, food sent in, or whatever else is needed to deal with the crisis. The committees are to be commended for adding this provision, thus, recognizing that emergencies which strike families cannot be delt [sic] with by business-as-usual methods.

113 Cong.Rec. 36925 (1967) (Remarks of Senator Mansfield).

12. The reference to a reduction in welfare rolls in the Senate Report is at least equally referable to the new work incentive program added in the same group of amendments to the Social Security Act. See S.Rep.No.744, 90th Cong., 1st Sess., 1967 Cong. & Admin. News p. 2983.

**1220**

defendants' interpretation is compatible with their representation that HEW recommended that Massachusetts utilize AFDC and GR eligibility standards in implementing its EA program:

> "[T]he construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . ." Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); Dandridge v. Williams, 397 U.S. at 481–82, 90 S.Ct. 1153.

N. Y. Dept. of Social Services v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed. 2d 688 (1973).

■ Further, the defendants' view is supported by cases construing the AFDC law. Such cases are relevant to any examination of EA due to the close relationship between the two programs. Reference to the interpretation given analogous statutory provisions is another accepted method of statutory construction. Sutherland, Statutes and Statutory Construction § 51.01 (Sands 4 ed. 1973).

Both AFDC and EA are designed to aid needy families with children under a certain age. The enabling legislation for EA is in fact found in the AFDC definitions section of the United States Code, 42 U.S.C. § 606. The term "emergency assistance to needy families with children" is defined by reference to the more detailed definition sections of the AFDC law. See 42 U.S.C. § 606(e); 42 U.S.C. § 606(a)(1).

The Supreme Court has taken two sharply divergent approaches in reviewing state eligibility requirements for the AFDC program. First, there are the cases construing AFDC eligibility requirements having nothing to do with standards of need or levels of payment. See Carver v. Hooker, 369 F.Supp. 204, 208 n. 14, 210–11 (D.N.H.1973). In such cases:

> [A]t least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause.

Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971).

When the issue involves standard of need or level of payment, however, the Court has consistently recognized that the States have a wide berth:

> There is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program.

King v. Smith, 392 U.S. 309, 318–19, 88 S.Ct. 2128, 2134, 20 L.Ed.2d 1118 (1968). The Supreme Court's ruling is based on explicit statements contained in the legislative history of the Social Security Act of 1935. Id. at 318 n. 14, 88 S.Ct. 2128.

Many cases set forth the proposition that there is no federal mandate in the areas of standard of need or level of payment. See Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); see also Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974); N. Y. Dept. of Social Services v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1972). Nothing in the EA legislation or its legislative history indicates an intent on the part of Congress to distinguish EA from the AFDC "scheme of cooperative federalism" King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 20 L.Ed. 2d 1118 (1968).

Accordingly, the court finds no conflict between state and federal law and thus no violation of the Supremacy Clause.

So ordered.