**Venus MANDLEY et al.,**
**Plaintiffs-Appellants,**

v.

**James L. TRAINOR et al.,**
**Defendants-Appellees.**

**Nos. 75–1083, 75–1245.**

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1975.

Decided Sept. 25, 1975.

Joan Humphrey, James D. Weill, Stephen G. Seliger, Michael F. Lefkow, Lorelei Borland, Chicago, Ill., for plaintiffs-appellants.

Irving Jaffe, Acting Asst. Atty. Gen., David M. Cohen, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., Samuel K. Skinner, U. S. Atty., Thomas P. Sullivan, Gregory G. Wille, Chicago, Ill., for defendants-appellees.

Before MOORE,* Senior Circuit Judge, CUMMINGS and BAUER, Circuit Judges.

CUMMINGS, Circuit Judge.

This class action was brought by Illinois recipients of the Aid to Families with Dependent Children (AFDC) program and the Illinois and Chicago Welfare Rights Organizations against the Illinois Department of Public Aid (the Department), its director and the United States Department of Health, Education and Welfare (HEW). Plaintiffs alleged that the Department's revised program for emergency assistance to AFDC recipients violated Section 406(e) of the Social Security Act (42 U.S.C. § 606(e)), regulations promulgated thereunder by HEW, the Equal Protection Clause of the Fourteenth Amendment, and the Illinois Public Aid Code (Ill.Rev.Stats. ch. 23, § 12–8 (1973)). Plaintiffs sought declaratory and injunctive relief against the implementation and operation of the program and an injunction requiring expedited processing and delivery of emergency assistance to those eligible to receive it.

After a bench trial, the district court rendered a decision holding that the Illinois program for emergency assistance conforms to the requirements of federal and state law, except that the processing was too slow. Jurisdiction was refused with respect to the pendent state claim that the Illinois program violates the Illinois Public Aid Code. However, the State defendants were ordered to show cause with respect to expediting emergency assistance.

In its second memorandum opinion, the district court ordered the State defendants to show cause why emergency assistance checks could not be written in Chicago or in a district office other than Springfield, Illinois, or why some other method of payment could not be devised to eliminate delays from unnecessary Springfield mailings.

The district court's final decision was entered on March 14, 1975. This order specified the steps to be taken by the Department to speed up the delivery of assistance in Cook County. However, in practical effect the order did not require the state defendants to furnish emergency assistance in the 101 other Illinois counties by any means other than mailing from Springfield.

Plaintiffs appealed from the original and final orders of the district court insofar as they denied plaintiffs the requested relief. We find the Illinois emergency assistance scheme to be in conflict with the Social Security Act and therefore invalid by virtue of the Supremacy Clause of the Constitution. Accordingly, we reverse that portion of the district court's order that is to the contrary.[1]

In 1935, Congress enacted the AFDC program as Title IV–A of the Social Security Act. Provision for the economic security of children was made by offering substantial federal funds to states submitting plans complying with the Act and HEW regulations. In 1968, Congress enacted an emergency assistance

---

* Senior Circuit Judge Leonard Page Moore of the Second Circuit is sitting by designation.

1. Such reversal was also sought by various charities that filed a brief *amici curiae*.

program to enable states to meet the immediate needs of children. The present dispute concerns the mandatory scope of the program under the federal statute once a state decides to include emergency assistance in its plan.

The key provision of the Social Security Act with respect to emergency assistance to needy children is contained in 42 U.S.C. § 606(e) (Section 406(e) of the Act) which provides:

"(1) The term 'emergency assistance to needy families with children' means any of the following, furnished for a period not in excess of 30 days in any 12-month period, in the case of a needy child under the age of 21 who is (or, within such period as may be specified by the Secretary, has been) living with any of the relatives specified in subsection (a)(1) of this section in a place of residence maintained by one or more of such relatives as his or their own home, but only where such child is without available resources, the · payments, care, or services involved are necessary to avoid destitution of such child or to provide living arrangements in a home for such child, and such destitution or need for living arrangements did not arise because such child or relative refused without good cause to accept employment or training for employment—

"(A) money payments, payments in kind, or such other payments as the State agency may specify with respect to, or medical care or any other type of remedial care recognized under State law on behalf of, such child or any other member of the household in which he is living, and

"(B) such services as may be specified by the Secretary;

but only with respect to a State whose State plan approved under section 602 of this title [section 402 of the Act] includes provision for such assistance.

"(2) Emergency assistance as authorized under paragraph (1) may be provided under the conditions specified in such paragraph to migrant workers with families in the State or in such part or parts thereof as the State shall designate."

In summary, this statute authorizes emergency assistance to a needy child under 21, living with relatives specified in 42 U.S.C. § 606(a), who is without available resources, if the assistance is necessary to avoid destitution or to provide living arrangements in a home, and if the need did not arise because such child or relatives refused without good cause to accept training or employment.

Under the March 1971 Illinois emergency assistance plan, its first election of the reimbursement of provisions in 42 U.S.C. § 606(c), eligibility was limited to AFDC recipients and confined to the following needs:

"§ 6510 EMERGENCY ASSISTANCE PROVISIONS: ACTIVE AFDC ONLY

"(a) Paying delinquent rent or property payments allowed in lieu of rent to prevent eviction;

"(b) Paying delinquent utilities bills to restore discontinued service; and

"(c) Meeting immediate, emergent needs for other items of basic need included in the Standards of Assistance."

Moving costs were later added, and needy families not eligible for AFDC were excluded unless their needs resulted from civil disorders.

Subsequently HEW suggested that Illinois should be more specific in the listing of the emergencies it did compensate. Therefore, on October 1, 1973, the Department revised its program and limited assistance to situations where an "emergent need" existed. The payments were still restricted to those eligible for AFDC and further restricted by the definition of "emergent need":

"An 'emergent need' exists when one of the following crisis situations occurs:

"1. The AFDC family is homeless (without shelter) as a result of damage

to the building rendering it uninhabitable (example: fire, condemnation).

"2. A court-ordered eviction occurs for reasons other than the recipient's failure to pay rent.

"3. The AFDC family is potentially homeless due to damage to a portion of the building.

"4. The AFDC applicant, determined presumptively eligible for AFDC, is in emergent need of clothing and/or household furnishings and equipment."
(Ch. 6500 of the Categorical Assistance Manual of the Department.)

Since the eligibility provisions were severely restricted in the October 1973 revisions in the program, the Department has provided only about one-fifth of the total dollar aid provided to needy families under the prior program.

■■■ Plaintiffs challenge the Illinois program for administering reimbursable emergency assistance under 45 U.S.C. § 606(e), Section 406(e) of the Social Security Act, as invalid for both constitutional and non-constitutional reasons. In accord with the time-honored practice of avoiding constitutional questions where a non-constitutional ground exists for resolving the case, this Court deals first with plaintiffs' statutory argument.[2]

*Validity of Illinois Emergency Assistance Plan*

Plaintiffs first argue that defendants' program unlawfully excludes persons made eligible by the emergency assistance provisions of the Social Security Act. Plaintiffs claim that the Illinois program has unlawfully established eligibility standards narrower than those in 42 U.S.C. § 606(e) because that program provides assistance only to persons whose emergency needs fall within four limited types of crisis situations and provides no emergency assistance for families who are not applicants for or recipients of AFDC. Thus needy families who are in danger of destitution within the meaning of 42 U.S.C. § 606(e), but who are not otherwise eligible for AFDC or whose destitution came about in a manner not enumerated in Chapter 6500 of the Department's Manual, are denied emergency assistance. Plaintiffs rely especially on *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352; *Townsend v. Swank*, 404 U.S. 282, 92

2. Plaintiffs plead federal question jurisdiction, which requires that more than $10,000 exclusive of interest and costs be in controversy. 28 U.S.C. § 1331. The complaint asserts that such an amount is in controversy and defendants do not complain that jurisdiction has been improperly exercised by the district court. This Court must assure itself that the district court had jurisdiction, regardless of the positions taken by the parties, because federal courts are courts of limited jurisdiction.

Assuming without deciding that the plaintiffs cannot properly show $10,000 as to each member of the class because of the 30-day per year restriction on emergency (*Baxter v. Minter*, 378 F.Supp. 1213, 1216–1217 (D.Mass. 1974)), there is no § 1331 jurisdiction. See generally Note, Federal Judicial Review of State Welfare Practices, 67 Colum.L.Rev. 84 (1967). Since plaintiffs here allege Civil Rights Act jurisdiction through 42 U.S.C. § 1983 and 28 U.S.C. § 1343, and since the claim is not insubstantial, the statutory claims against the state defendants, at least, may be taken pendently. See *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525. Jurisdiction over the federal defendant is una-

vailable under the Civil Rights Act, so that the assertion of pendent jurisdiction over it is a complex and difficult jurisdictional question. See *Philbrook, supra*, at 720–722, 95 S.Ct. 1893.

However, since the plaintiffs also allege jurisdiction under 28 U.S.C. § 1361, and since this Court concludes *infra* that Section 606(e) does set forth mandatory eligibility standards in the absence of clear intent to the contrary in the federal statute or its history, mandamus jurisdiction will lie with respect to the federal defendant. Thus this Court need not reach the difficult pendent jurisdictional question. In holding Section 1361 applicable here, we are mindful of the criteria set out in *City of Highland Park v. Train*, 519 F.2d 681 at 691 (7th Cir. 1975, and modified July 24, 1975), for exercising mandamus jurisdiction. These criteria are satisfied in this case.

Since HEW would be practically bound by our decision, even if it were technically handed down only with respect to the state defendants, we assume that HEW would move to intervene on remand even if we had dismissed it in this Court. See *Philbrook, supra,* at 720–722, 95 S.Ct. 1893.

S.Ct. 502, 30 L.Ed.2d 448; *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561; and *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118.[3] Those cases establish that a state program which restricts eligibility beyond what was intended by Congress is invalid for inconsistency with the Social Security Act. In *Townsend*, the Illinois defendants and HEW asserted that Congress authorized the states to vary eligibility requirements from federal standards. However, the Court held that once a state elected to extend benefits to 18–20 year-olds, it was required to include all those made eligible by 42 U.S.C. § 606(a)(2)(B), including college students. The other cases cited *supra* are similar. Each case involves a state's attempt to draw AFDC eligibility criteria more narrowly than the eligibility criteria set out in the Social Security Act and each attempt was rejected as invalid as contrary to the intent of Congress.

 Section 406(e) of the Act extends coverage for emergency service to a family with a needy child under 21 living with any of the relatives specified in Section 406(a)(1), in a place of residence maintained by one or more of such relatives as his or their own home. However, Congress limited the reimbursement for emergency assistance for such a needy family to situations where the child is without available resources and assistance and the assistance is necessary to avoid destitution or to provide a living place in a home for such child, provided "such destitution or need for living arrangements did not arise because such child or relative refused without good cause to accept employment or training for employment." In our view, all children who fall within this definition are made eligible for emergency assistance.

Section 406(e) specifically permits two areas of state discretion. Thus the state is permitted to furnish emergency assistance in the form of "money payments, payments in kind, or such other payments as the State agency may specify." Also, Congress provided that a state may provide emergency aid to migrant farmworkers (presumably despite residency requirements in the state plans), and may select parts of the state in which to provide emergency assistance to migrant workers (presumably despite the mandate in 42 U.S.C. § 602(a)(1) that elected programs must be administered statewide).

 The state defendants and, to a lesser degree, the federal defendant insist that the language of 42 U.S.C. § 606(e)(1) does not establish standards of eligibility at all, but merely defines the maximum limits of reimbursable emergency assistance. Thus in their view Section 606(e)(1) describes what is provided rather than who is covered. We reject this semantical argument. Similar arguments could have been made in *King*, *Townsend* and *Carleson* as to the eligibility provisions of the Social Security Act discussed there; yet the Supreme Court viewed the provisions as relating to eligibility. The provisions in Section 606(e)(1) discussed *supra* describe eligibility criteria for the emergency aid program. Thus the central issue in this case becomes whether Congress intended to allow the states to apply eligibility criteria that are narrower than those set out in Section 606(e)(1). If, as plaintiffs argue, Congress intended that any state which elected to participate in the emergency aid reimbursement program must provide aid to all those eligible under the provisions of Section 606(e)(1), the Illinois program is invalid since it more narrowly restricts the availability of emergency assistance. See the quotation from the Department's Categorical Assistance Manual, Ch. 6500, *supra* at 5, and the surrounding discussion. If, however, Congress intended to allow the states to adopt their own eligibility requirements, Illinois' program does not

---

**3.** See also *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208; *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525; *Burns v. Alcala*, 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469; and *Lascaris v. Shirley*, 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed. 2d 583.

conflict with Section 606(e). Our task is to interpret the intent of Congress. In attempting to discern that intent, this Court is mindful that no special presumptions in favor of coverage are to be applied in interpreting provisions of the Social Security Act and that the normal tools of legislative interpretation are to be employed. *Burns v. Alcala*, 420 U.S. 575, 578, 95 S.Ct. 1180, 43 L.Ed.2d 469.

As is often the case, the legislative history of 42 U.S.C. § 606(e) contains little information helpful as to Congressional intent on the crucial issue here. See Senate Report No. 744, 90th Cong., 1st Sess., 2 U.S.Code, Congressional & Admin.News, 2834, 3002–3004 (1967). Both sides in this case point to various portions of the legislative history for support of their positions, but nothing cited is conclusive.

█ We deem it worthwhile to note that it is clear from the Senate Report on the bill that Congress intended that families who were not eligible for AFDC should be eligible, as far as the federal Government was concerned, for emergency aid under Section 606(e). *Idem* at 3003. While this does not answer the question whether Congress intended the states to have the right to narrow the eligibility under Section 606(e), it does indicate that Congress was concerned about a broader group of needy children than Illinois' program covers. Moreover, it appears that Congress was concerned with needy children who were approaching destitution from a variety of causes other than those recognized by Illinois. Thus the Senate Report states:

> "The committee understands that the process of determining AFDC eligibility and authorizing payments frequently precludes the meeting of emergency needs when a crisis occurs. In the event of eviction or when utilities are turned off, or when an alcoholic parent leaves children without food, immediate action is necessary. It frequently is unavailable under State programs today. When a child is suddenly deprived of his parents by their accidental death or when the

agency finds that conditions at home are contrary to the child's welfare, new arrangements and court referrals may have to be made." (*Idem* at 3002.)

While the legislative history is not conclusive of Congress' intent, it does show that there is no specific indication that Congress intended the states to be able to narrow the eligibility criteria, that Congress was much concerned with the emergency needs of all children approaching destitution, whether or not they were AFDC eligible, and that Congress considered that there was need for aid to needy children who approached destitution due to reasons other than those recognized in the Illinois program. We also note that the general tenor of the legislative history shows great concern for those families with children who are in need of emergency aid.

Defendants rely on the HEW regulation that interprets Section 406(e) of the Act to allow the states to set the criteria for eligibility, 45 C.F.R. § 233.1200 (1974). Defendants claim that this interpretation of the agency charged with administering the program is entitled to great weight, especially in the absence of a clear legislative intent in the provision's history. See *New York Department of Social Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688; *Udall v. Talman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616. However, another regulation promulgated by HEW after the *Townsend* decision is also relevant. 45 C.F.R. § 233.10(a)(1)(ii) applies to the chapter of the Act containing Section 406(e) and provides in part:

> "(ii) A State may:
>
> "(A) Provide more limited public assistance coverage than that provided by the Act *only where the Social Security Act or its legislative history authorizes more limited coverage;*" (emphasis added).

As has been seen, there is no clear indication in the legislation or its history indicating that Congress intended to allow the states to construct narrower eli-

gibility requirements than those in the statute. Thus it is difficult to perceive the justification for HEW's promulgation of 45 C.F.R. § 233.120. This would not be the first time that HEW has sought discretion for the states that the courts have held was not intended by Congress to be given to them. In light of these factors we do not feel it proper to rely heavily on the administrative interpretation of Section 406(e). See also *Application of Bryant v. Lavine*, 79 Misc.2d 425, 359 N.Y.S.2d 492 (Sup.Ct. 1974); *Application of Preston v. Barbaro*, 61 Misc.2d 327, 305 N.Y.S.2d 627 (Sup.Ct.1969).

The Government notes that the *Carleson, Townsend, Burns* and *King* cases, *supra*, relied on 42 U.S.C. § 602(a)(10) which provides that "aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals." Then the Government contends that this provision does not apply to 42 U.S.C. § 606(e) because "dependent child" is not used therein. We believe that Sections 602(a) and 606(e) cannot be so neatly and completely severed. Section 602 sets forth what state plans must provide in order to qualify for federal reimbursement. It also contains the hearing provisions (§ 602(a)(4)), the "reasonable promptness" provisions (see *Adens v. Sailer*, 312 F.Supp. 923, 926 (E.D.Pa.1970)), the state reporting provisions (§ 602(a)(6)), and others that must apply to Section 606(e) in any reasonable interpretation of the entire Act. It also appears that when Congress wished to make an exception to the generally applicable provisions of Section 602(a), it was able to do so clearly. Thus in Section 606(e)(2) Congress expressly noted that emergency assistance to migrant workers need not be statewide. This seems an apparent exception to Section 602(a)(1), requiring a state plan to be in effect in all political subdivisions of the state. The close relationship between Sections 602(a) and 606(e) leads us to believe that Congress intended that Section 606(e) be treated in the same way as Section 606(a), which also is closely relat-

ed to Section 602, despite the inclusion in Section 602(a)(10) of the phrase "families with dependent children." The Supreme Court cases listed earlier in the opinion hold that Congress intended the eligibility requirements of Section 606(a) to be mandatory on the states. See, e. g., *Burns, supra*, 420 U.S. at 578, 95 S.Ct. 1180; *Carleson, supra; Townsend, supra.* It therefore appears that Congress intended that the eligibility provisions of Section 606(e) be mandatory on the states, just as the courts have held with respect to the eligibility requirements of Section 606(a).

■ In summary, Section 606(e) is part of the same statutory scheme as Sections 606(a) and 602. The same Congressional concern with deprivation of children that brought forth the AFDC program was at the root of the emergency assistance program as well. Since the legislative history of the latter program demonstrates continuing Congressional concern with the nation's poor children and contains no indication that its eligibility provisions are to be more in state control than its closely related sister program, we must follow the number of Supreme Court cases that have held that the eligibility provisions of the federal program cannot be narrowed by the states.

■ Illinois, should it elect to continue to provide an emergency assistance program in the future, will still have substantial control of its program. It will be able to choose the level of benefits that it will provide and to set the standard of need. It may reasonably limit the amounts paid out in emergency assistance, *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, but it will not be able to declare ineligible those who come within the federal definition of eligibility in Section 606(e). This Court need not establish the exact meaning of the eligibility provisions of Section 606(e) because this case requires only that the validity of the specific Illinois program be determined. The problem of setting workable definitions for

the somewhat amorphous eligibility criteria in Section 606(e) may be addressed by HEW rule-making.[4] Such rule-making should aid the states in preparing programs that are in accord with the eligibility criteria set by Congress. Illinois may no longer conduct an emergency assistance program under Section 606(e) in which some of the families with needy children described in Section 606(e) are given aid and some are not. Because Illinois has accepted federal funds to operate an emergency assistance program, it is bound by the eligibility provisions of 42 U.S.C. § 606(e). This need not result in additional expense to the state but with existing appropriations should at least result in helping a broader number of persons, although more moderately than at present.

Since we hold that the Illinois emergency assistance program defines eligibility more narrowly than 42 U.S.C. § 606(e) and therefore is in violation of the Social Security Act, we need not consider whether the program violates the Equal Protection Clause of the Fourteenth Amendment or the Illinois Public Aid Code.

*Mailing of Emergency Assistance Checks Outside Cook County*

As noted, Section 402(a)(10) of the Act requires aid to be "furnished with reasonable promptness." Section 406(e) itself prescribes no time for delivery of emergency assistance, but a regulation of HEW requires that a state plan provide that "emergency assistance will be given forthwith." 45 C.F.R. § 233.-120(2)(5). This accords with the Senate

Report on the 1967 amendments showing that "immediate action is necessary" to alleviate "an immediate need" for emergency assistance. Sen.Rep. No. 744, 90th Cong., 1st Sess., 2 U.S.Code Cong. & Admin.News at 3002 (1967).

■ Plaintiffs have not satisfied us that Judge McMillen was wrong in stating in his March 14, 1975, order that "Up to this date there has been no evidence of delays outside of Cook County * *." If, on remand, plaintiffs can show that payments are not delivered "forthwith" in the downstate Illinois counties, the district court should require the state defendants to adopt other methods (such as disbursing orders or preposition checks) to avoid unnecessary delays in alleviating destitution. See *Purnell v. Edelman*, 511 F.2d 1248 (7th Cir. 1974); *Adens v. Sailer*, 312 F.Supp. 923 (E.D.Pa.1970).[5] However, if downstate payments are quickly processed and received by mail one or two days afterwards, judicial intervention will be unnecessary.

In closing, we are not satisfied that the district court's order of March 14, 1975, failed to provide plaintiffs with adequate equitable relief with respect to the "forthwith" requirement. On remand, that court will surely retain continuing jurisdiction or otherwise afford plaintiffs further relief if they can show the necessity therefor.

The order of March 14, 1975, is affirmed. The order of November 21, 1974, is reversed insofar as it sustained the validity of the Illinois program for emergency assistance. Costs of this appeal are awarded to plaintiffs.

---

**4.** Plaintiffs amended the conclusion of their main brief to request restitution for one of the named plaintiffs, Frances Gallman, who was allegedly eligible under the federal criteria when she was robbed of her monthly aid funds. Since we do not here decide the exact content of the emergency assistance program, but only hold that Illinois' present regulations are invalid, it would be inappropriate for us to decide whether Gallman was indeed eligible, particularly since HEW has not had an opportunity to make rules aiding the states and the

courts in discerning the specific rules as to who is eligible. Accordingly, we decline to consider Gallman's request for restitution on this appeal.

**5.** Since the court ordered the same delivery procedures for the downstate counties as for Cook County, we cannot agree that the court discriminated in favor of Cook County in violation of Section 402(a)(1) of the Act and 45 C.F.R. § 250.120(a).