Margaret **PURNELL** et al.,
**Plaintiffs-Appellees,**

v.

Joel **EDELMAN**, Director of Illinois **Department of Public Aid, et al.,**
**Defendants-Appellants.**

Nos. **74–1051, 74–1052.**

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1974.

Decided April 10, 1974.

William J. Scott, Atty. Gen., Jerrald B. Abrams, Asst. Atty. Gen., Chicago, Ill., for defendants-appellants.

Jonathan M. Hyman, Marianne R. Smigelskis, Alan Dockterman, Chicago, Ill., for plaintiffs-appellees.

Before PELL and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.*

PER CURIAM.

This action was originally brought to challenge the Illinois Department of Public Aid's policy which authorized payment of emergency financial assistance for the purpose of maintaining utility services of public aid recipients only *after* such utility services had been discontinued. The complaint alleged that the emergency assistance program had been established and funded pursuant to 42 U.S.C. § 606(e)(1), that § 606(e)(1) provides that emergency assistance is to be given to "avoid destitution," that federal regulations implementing the program require that emergency assistance be given "forthwith," and that Illinois had identified the termination of utility services as a type of destitution warranting emergency assistance through the use of funds appropriated under § 606(e)(1). The thrust of plaintiffs' complaint is that a program which provides emergency relief for the termination of utility services only *after* those utility services have been terminated does not "avoid destitution." Accordingly, plaintiffs sought an order in the district court which would require the Department to provide such emergency assistance prior to the termination of utility services.

On November 2, 1973, the district court entered an order granting plaintiffs' motion for summary judgment. This order was entered after the district court had examined verified pleadings,

* Senior District Judge William J. Campbell is sitting by designation from the Northern District of Illinois.

interrogatories, depositions, affidavits filed by the parties and stipulations submitted by the parties in compliance with the court's pretrial order. In an accompanying Memorandum of Decision, the district judge found that the Illinois program was established and federally funded pursuant to § 606(e)(1), and that the "primary legal issue presented by this case is whether the standards of the Social Security Act require Illinois to furnish emergency utility assistance while the recipient is still receiving utility services." The district judge held that the failure to give timely assistance occurred when the Department of Public Aid permitted the utility services to be discontinued: "In refusing to authorize assistance when the termination of service is imminent and otherwise unavoidable, this court holds that this failure constitutes a violation of I.D.P.A.'s duty pursuant to 45 C.F.R. §§ 233, 120(a)(5) to provide assistance 'forthwith' when confronted with an emergency situation."

On November 19, 1973, the district court entered an order declaring invalid the policy of requiring the discontinuance of utility services prior to the receipt of emergency assistance, on the ground that that policy violated 42 U.S.C. § 606(e)(1) and 45 C.F.R. § 233.-120(a)(5). The order enjoined the defendants from refusing to grant emergency assistance for the payment of overdue utility payments when utility termination is imminent and otherwise unavoidable.

The Order further ordered defendant Edelman to

"issue and distribute in the normal manner to his agents and employees within thirty days from the entry of this Order, such directives as may be necessary to repeal the prohibition against granting emergency assistance prior to termination of utility service when such termination is imminent and otherwise unavoidable and requiring that emergency assistance be provided prior to the termination of utility services in order to prevent such termination for recipients of Aid to Families with Dependent Children when such termination is imminent and otherwise unavoidable . . .."

Defendant Edelman was ordered to submit copies of the aforesaid directives to the district court for its approval at least seven days prior to the issuance of the directives. The district court order specifically provided that "nothing in this order shall restrict defendants' ability to modify or rescind its participation in the Emergency Assistance Program . . .." In addition, paragraph 8 of the district court's order stated that "this order is applicable only to the emergency assistance given by the defendant for which he received federal reimbursement pursuant to 42 U.S.C. § 606(e)(1), and this order is inapplicable to any emergency assistance given which is paid for wholly with State of Illinois funds."

Subsequent to the issuance of the court's order, defendants moved for a rehearing. This motion was denied. Defendants thereafter filed a proposed official bulletin which was submitted to the court in an effort to comply with the order of November 19, 1973. Plaintiffs also filed a suggested bulletin. The district court found the defendants proposed bulletin unacceptable, and adopted the bulletin proposed by the plaintiffs. Shortly thereafter, the defendants moved to vacate the court's order adopting the bulletin proposed by the plaintiffs, asserting for the first time that since October 1, 1973, Illinois had ceased to participate in the Federal Emergency Assistance Program for the purpose of providing emergency assistance to recipients threatened by the termination of utility services. Defendant's motion was denied by the district judge on January 2, 1974, and on January 10, 1974, the Department filed its notice of appeal.

On appeal, the Department argues that the original emergency assistance policy regarding termination of utility services comported with federal requirements promulgated under § 606 (e)(1). With respect to this contention, we believe the district court's deci-

sion was eminently correct. The Social Security Act requires that the emergency funds be issued to "avoid destitution"; the regulations issued pursuant thereto require that the funds be issued "forthwith." Once the state has designated that § 606(e)(1) funds shall be used to provide emergency assistance with respect to the termination of utility services, the state must employ emergency procedures which effectively avoid such destitution.

The state's policy of paying emergency funds only after termination results in the loss of utility services to public aid recipients for periods of at least two days, and the evidence indicates that some plaintiffs suffered a loss of such services for as much as five days due to a five-step bureaucratic process employed by the Department of Public Aid. As the plaintiffs convincingly argue, the federal program is not designed merely to cure destitution that has already occurred. Its purpose is to *avoid* destitution. Since the purpose of the program is to prevent a welfare recipient from becoming destitute, the district court properly found that the only effective way of doing so was to require the payment of emergency funds once the recipient had received a final notice of termination and could establish that he or she is without immediately accessible resources sufficient to prevent termination of utility services.

Defendants next contend that the district court's order adopting the bulletin suggested by plaintiffs constitutes a usurpation of executive and legislative authority. Defendants' contention in this regard is wholly without merit. It is undisputed that the district court had jurisdiction to determine whether the Department's emergency assistance policies were in conformity with the requirements of the Social Security Act. It would be an anomalous result indeed to conclude that the court lacked the necessary authority to issue orders which effectively enforce the court's decision. In the instant case, the court ordered defendant Edelman to issue and distribute

such directives as may be necessary to repeal the prohibition against granting emergency assistance prior to termination of utility services when such termination is imminent and otherwise unavoidable. Edelman was ordered to submit copies of such directives to the court for its approval at least seven days prior to issuance thereof. The defendant failed to propose, in a timely manner, a bulletin which implemented the court's order to the satisfaction of the district judge. The court therefore adopted the proposed bulletin submitted by the plaintiffs, and ordered that it be promulgated by the Department of Public Aid. In doing so, the court did not usurp the authority of the executive or the legislature, but simply took the minimal action necessary to enforce its own order.

Finally, the defendants contend that since October 1, 1973, at which time the Department of Public Aid implemented the Consolidated Standard System (commonly known as the "flat grant" system), emergency assistance funds provided under § 606(e)(1) are not used for the purpose of restoring utility services which have been terminated for non-payment of utility bills. The defendant argues that, to the limited extent that emergency assistance is provided to restore utility services, the funds expended for this purpose are no longer reimbursable under § 606(e)(1). Accordingly, the Department argues that it is no longer bound by the district court's order of October 19, 1973, pointing to the language of that order which limits its applicability "only to emergency assistance given by the defendant for which he received federal reimbursement pursuant to 42 U.S.C. § 606(e)(1) . . . ." The order provides that it is inapplicable to any emergency assistance given which is paid for wholly with State of Illinois funds.

We do not agree with plaintiffs' contention that the failure to raise this mootness argument at the district court precludes its consideration on appeal, particularly since the defendant moved in the court below to vacate the district court's order on this very ground.

The plaintiffs further argue that defendant's contention in this regard is contrary to the stipulation of facts presented to the district court, and "if what the defendants stipulated to below is indeed not a fact, a number of new legal issues are presented that would have to be litigated. The defendant's attempt to reduce his participation in the emergency assistance program may have violated the Social Security Act, or it may create distinctions, arbitrariness or arbitrary presumptions that violate due process or equal protection. If the source of funding changes, so does the legal complexion of the case."

 This appeal does not present for our consideration any issue specifically addressed to the legality of the changes allegedly adopted by the Department after November 19, 1973 with respect to the payment of emergency assistance funds on behalf of public aid recipients. Moreover, the plaintiffs correctly note that "it is by no means clear that the defendant had abandoned federal funding. His allegations in that regard are no more than unsworn assertions of counsel." Since the court's order of November 19, 1973 applied only to emergency assistance for which the defendant received federal reimbursement pursuant to 42 U.S.C. § 606(e)(1), these unresolved issues of fact must be considered and determined by the district court. If the Department is providing emergency assistance with respect to utility service through the use of federal funds under § 606(e)(1), the court's order should be enforced. If not, under the language of the court's order of October 19, 1973, the Department is not bound to provide emergency assistance prior to the termination of utility services.

Accordingly, the summary judgment of the district court is affirmed and the district court order adopting the proposed bulletin submitted by plaintiffs is vacated, and this cause is remanded to the district court for determination as to whether the Department of Public Aid had discontinued payment of emergency assistance funds reimbursable under § 606(e)(1) with respect to the termination of utility services and for further proceedings consistent with the view expressed herein. As the issue is not before us, we offer no opinion as to the legality of the changes in the Department's emergency assistance programs which were allegedly initiated on October 1, 1973.

Affirmed in part. Vacated and remanded in part.