Julia GONZALEZ, Individually and as guardian ad litem for Luis Gonzalez, age 9, and Manuel Gonzalez, age 10, and further on behalf of all persons similarly situated, Plaintiffs,

v.

James F. YOUNG, Director, Hudson County Welfare Board, and G. Thomas Ritti, Director, New Jersey Division of Public Welfare, Defendants.

Civ. A. No. 76–455.

United States District Court,
D. New Jersey.

Aug. 13, 1976.

Hudson County Legal Services, by Theodore A. Gardner, Jersey City, N. J., for plaintiffs.

Hudson County Welfare Board, by William D. Surdovel, Jersey City, N. J., for defendant Young.

William F. Hyland, Atty. Gen. of N. J., by Richard M. Hluchan, Deputy Atty. Gen., Trenton, N. J., for defendant Riti.

## OPINION

MEANOR, District Judge.

The parties have filed cross motions for summary judgment. Following the filing of briefs directed to the issues raised in these motions, as well as to the issue of this court's jurisdiction, arguments were heard and decision was reserved. Due consideration having been given to the arguments advanced by the parties, the court has concluded that the plaintiff's motion for summary judgment will be denied on the grounds that the state regulation in question is not in conflict with the federal statute and regulation. For the reasons that appear below, judgment will be entered in favor of defendants Young and Riti.

The facts material to decision are not in dispute. The first named plaintiff, Julia Gonzalez, resides in Jersey City, New Jersey with her two children, Luis and Manuel. She and her children are impoverished. Each month Julia Gonzalez receives a check from the Hudson County Welfare Board in the amount of $235. This check is issued pursuant to the Aid to Families with Dependent Children program, hereinafter AFDC. 42 U.S.C. § 601 et seq. AFDC is funded in major part by the federal government and to a lesser extent by state and local authorities. The AFDC check lists Ms. Gonzalez and her son Manuel, age 10, as beneficiaries. Luis Gonzalez, who is retarded is the recipient of $157 per month from the Social Security Administration's disability program. This check is made payable to Ms. Gonzalez as the protective payee for Luis. Thus, the Gonzalez family receives a total of $392 per month.

On Monday, February 2, 1976, Ms. Gonzalez received the two checks for the month of February. As was her custom, she cashed both of these checks at a supermarket near her home and placed the $392 inside her pocketbook. On her way home from the store, she was accosted, and her pocketbook was stolen. She was then left without the funds needed to pay her rent and utility bills which fell due in the month

of February. Ms. Gonzalez reported the theft to the Jersey City police, but there has been no recovery of the stolen cash.

The following day, plaintiff went to the Hudson County Welfare Board to request a grant of emergency assistance in the amount of $163, $65 for rent and $98 for the utility bill. The request was refused by the case worker, Nina Fondi. Ms. Gonzalez did, however, receive a quantity of food stamps from Miss Fondi. The denial of emergency assistance benefits was based upon a determination by the case worker and her administrative supervisor that Ms. Gonzalez did not qualify under the provisions of § 4810 of the New Jersey Public Assistance Manual for a grant of emergency assistance. Miss Fondi made phone calls to Ms. Gonzalez's landlord and to the utility company and had received verbal assurances that the utilities would not be turned off and that the landlord would take no steps to evict the Gonzalez family.

Ms. Gonzalez then retained an attorney and made a written request for an emergency grant to the Hudson County Welfare Board on February 25, 1976. The Board thereafter responded and denied the application. Subsequently, plaintiff's attorney wrote to Mr. G. Thomas Riti, the Director of the New Jersey Division of Public Welfare, requesting an accelerated hearing in regard to the County Board's denial. Apparently, this letter was not answered.

Plaintiff commenced this action on March 11, 1976. On the same day, the court signed an order to show cause, making it returnable April 12, 1976. This order directed the defendants to answer within 20 days of service upon them and to be prepared on April 12, 1976 to show cause why the following orders should not issue:

(a) an interlocutory injunction mandating defendant James F. Young to pay Julia Gonzalez the sum of $163 immediately;

(b) an order certifying the proposed plaintiff class, and

(c) an order permitting the named plaintiffs to proceed in forma pauperis.

The order to show cause additionally specified the manner in which the defendants were to be served with process.

The verified complaint is drawn in two counts. The first count alleges that James F. Young's denial of emergency assistance benefits to Ms. Gonzalez unlawfully deprived her of a right secured to her under federal statute and regulation, 42 U.S.C. § 606(e)(1) and 45 C.F.R. § 233.120. It further alleges that Young's denial was also a violation of state law. The second count is directed at Mr. Riti and alleges that his failure to implement any meaningful administrative review procedures in regard to emergency assistance payments has and continues to "infringe upon, obstruct and effectively deny" AFDC recipients emergency assistance payments which are available to them under federal law.

By way of relief, the complaint seeks a preliminary injunction compelling defendant Young to pay the plaintiff the $163 she seeks in emergency assistance, a declaratory judgment finding that defendant Young has violated and continues to violate plaintiff's rights under federal law and a permanent injunction restraining Young from refusing emergency assistance benefits in the future. Furthermore, the complaint seeks declaratory and injunctive relief against defendant Riti.

Both of the defendants filed timely answers to the complaint and a hearing was held on the return date of the order to show cause. By letter opinion dated April 15, 1976, the court denied the application for preliminary injunctive relief against defendant Young. The court said at that time, "it is clear from the facts before the court that neither Public Service nor the landlord has undertaken steps to discontinue utility service or to evict. Thus, plaintiff is not faced with immediate and irreparable harm." The court also made a preliminary determination that the New Jersey Administrative Code provisions governing the issuance of emergency assistance benefits do not conflict with federal law. The court declined to consider the question of class certification at that time, finding that

the matter had not been adequately presented and that there was not sufficient information before the court "upon which to found a decision that a properly defined class exists." Finally, the court raised a serious question regarding the jurisdiction of the court to hear the matter and ordered the parties to submit briefs and to appear for oral argument on June 14, 1976.

On May 12, 1976, defendant Riti, by counsel, moved for summary judgment or in the alternative for an order dismissing the complaint as to him for failure to state a claim upon which relief can be granted. The basis for this motion is the assertion contained in Riti's affidavit that he has no power or authority to promulgate regulations in conjunction with the AFDC program, and, therefore, cannot be ordered to promulgate such regulations.

Plaintiff filed a counter motion for summary judgment on June 10, 1976 which was made returnable on June 14, 1976 so as to be heard at the same time as the other pending matters.

■ The hearing was held on June 14, 1976, following which the decision of the matter was submitted to the court on undisputed facts. At this hearing, it was brought to the court's attention that the New Jersey Commissioner of Institutions and Agencies had issued a new set of regulations providing for emergency fair hearings to review denials of requests for emergency assistance. Plaintiff's attorney conceded that, should this court require the plaintiff to exhaust her state administrative procedures as a prerequisite to bringing this action in the district court, the newly established state procedures were adequate. Consequently, it would appear that the relief sought under the second count of the complaint has been mooted.

■ At the conclusion of the hearing, the court indicated that it would await the decision by the Supreme Court in a case then pending which concerned exhaustion requirements in § 1983 suits. *Burrell v. McCray*, 423 U.S. 923 96 S.Ct. 264, 46 L.Ed.2d 249 (1976), decision below reported at 516 F.2d 357 (4th Cir. 1975). By order of June 14, 1976, the Supreme Court dismissed the writ of certiorari as improvidently granted, thereby letting stand the decision of the Court of Appeals for the Fourth Circuit. In these circumstances, it would appear that the plaintiff should not be required to exhaust her state administrative remedies before coming here.

## JURISDICTION

The complaint states a claim under 42 U.S.C. § 1983, which provides a cause of action for a deprivation, under color of state law, of any "rights, privileges or immunities secured by the Constitution and laws" of the United States. The plaintiff alleges that the New Jersey regulations implementing the federal emergency assistance program for AFDC recipients conflict with the applicable federal regulations and, thus, deprive her of the right to receive the federally mandated benefits. Compare, 42 U.S.C. § 606(e)(1) and 45 C.F.R. § 233.120 with New Jersey Administrative Code 10:82–12.11. The plaintiff further alleges that as a result of the narrower eligibility requirements established under the New Jersey regulation, she has been deprived, under color of state law, of rights secured by both the Constitution and laws of the United States. The only constitutional claim the plaintiff presents is that the alleged conflict between the state and federal statutes and regulations violates rights secured for her by the Supremacy Clause of the Constitution. The claim that she has been deprived of rights secured by the laws of the United States is essentially the same: that is, that she has a right under the federal statutes and regulations to receive emergency assistance benefits which are being denied her by state and local officials acting under color of state law.

■ Plaintiff seeks to posit jurisdiction over these § 1983 claims upon 28 U.S.C. §§ 1331 and 1343. It is unquestionable that the plaintiff has stated a claim arising under the Constitution or laws of the United States and that, if the amount here in controversy exceeded $10,000, exclusive of

costs and interest, this court would have jurisdiction under § 1331. However, it is apparent on the face of the complaint that the plaintiff seeks only $163 in damages together with declaratory and injunctive relief. Even as a class action, the amount in controversy requirement cannot be met because the individual claims of the members of this class cannot be aggregated. *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Therefore, this court has no jurisdiction to entertain the complaint under § 1331. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

■ Plaintiff's claim of jurisdiction under § 1343 is more substantial. There is no doubt that when a complaint states a non-frivolous constitutional claim under § 1983, a district court has the power under 28 U.S.C. § 1343(3) to decide other statutory claims based upon § 1983 even though it has not determined that there is an independent basis for district court jurisdiction over those claims. *Hagans v. Levine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Indeed, the court in *Hagans,* and in *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971) and *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) held that the case should be disposed of on the non-constitutional grounds if at all possible. Consequently, the Supreme Court has passed upon questions of federal statutory rights under the Social Security Act without having to decide whether, absent a non-frivolous constitutional claim to which to pend these claims, there is an independent basis for federal jurisdiction under § 1343(3) or (4).

Section 1983 creates a federal cause of action for a deprivation, under color of state law,

> of any rights . . . secured by the Constitution and laws of the United States.

Section 1343 invests the district courts with jurisdiction, without regard to the amount in controversy, of any civil action authorized to be commenced by any person:

> (3) To redress the deprivation, under color of state law . . . of any right . . . secured by the Constitution of the United States or by any Act of Congress *providing for equal rights of citizens* . . . .
>
> (4) . . . under any Act of Congress *providing for the protection of civil rights,* including the right to vote. (Emphases supplied.)

On its face, the language employed by the Congress in both (3) and (4) is narrower than that used in § 1983. The legislative history of the disparity between § 1983 and § 1343(3) does not explain the disparity with certainty; however, some observers have concluded that this disparity was simply accidental. *Lynch v. Household Finance Corp.,* 405 U.S. 538, at n. 7, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); *Note, Federal Judicial Review of State Welfare Practices,* 67 Col.L.Rev. 84 (1967); *Hart and Weschler, The Federal Courts and the Federal System,* p. 961 (2d Ed. 1973).

Plaintiff urges several interpretations of § 1343(3) and (4), any one of which would result in a finding of district court jurisdiction over all non-constitutional claims brought under § 1983 regardless of the amount in controversy. Plaintiff argues that the underscored language in (3) is superfluous; that § 1983 is itself an Act of Congress *"providing for equal rights of citizens"* within the meaning of (3); that § 1983 is itself an Act of Congress *"providing for the protection of civil rights"* within the meaning of (4); and, finally, that, taken as a whole, § 1343 was meant to confer jurisdiction over all claims arising under § 1983. Plaintiff, of course, also contends that the complaint states a non-frivolous constitutional claim over which it is undisputed that this court must exercise jurisdiction under (3).

■ All of these assertions are highly arguable, and, were this a matter of first impression in this district, they would require the most careful analysis. However, many of these same questions have recently been resolved by Judge Cohen of this district in a manner which compels me to

conclude that this court must exercise jurisdiction over the plaintiff's statutory claims under both (3) and (4). *Vazquez v. Ferre,* 404 F.Supp. 815 (D.C.N.J.1975). Thus, the court finds it unnecessary to decide whether the "secured by the Constitution" language of § 1343(3) should be construed to include Supremacy Clause issues and finds it unnecessary to decide independently any of the other issues presented by the parties on this question of jurisdiction.

## MERITS OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

New Jersey has elected to participate under that part of the Social Security Act which provides federal matching funds for state grants of emergency assistance to needy families with children. 42 U.S.C. § 606(e)(1); New Jersey Administrative Code 10:82–12.11. Plaintiff contends that the standards of eligibility established by the New Jersey regulations violate federal law in that they are more restrictive than the standards of eligibility mandated by the federal statute and regulations.

43 U.S.C. § 606(e)(1) defines "emergency assistance to needy families with children" as the payments of money, among other payments, to a needy child under the age of 21 meeting certain specifications, "where such child is without available resources" which payments "are necessary to avoid destitution of such child or to provide living arrangements in a home for such child." This same section provides that such emergency assistance shall not exceed a period of 30 days in any 12 month period.

The regulations implementing 42 U.S.C. § 606(e)(1) are contained at 45 C.F.R. § 233.-120. These regulations establish the minimum standards that proposed state plans, under Title IV, Part A, of the Social Security Act must meet. The proposed state plans must specify eligibility conditions imposed for the receipt of emergency assistance, which conditions may be more liberal than those applicable to other parts of the plan. The proposed state plans must specify whether migrant workers with families are to be included; which emergency needs are to be met; and what services the state proposes to supply. The proposed plan must also provide that emergency assistance shall be given forthwith. 45 C.F.R. § 233.120(a). The regulations also specify the extent of federal financial participation in the grants of emergency assistance. Subject to certain limitations not here relevant, the federal government will contribute to emergency assistance payments made to a qualified child where such "child is without resources immediately accessible to meet his needs," and "the emergency assistance is necessary to avoid destitution of such child or to provide living arrangements ·for him in a home." 45 C.F.R. § 233.120(b)(ii) and (iii).

New Jersey submitted a proposed plan to the Department of Health, Education and Welfare which met with the Secretary's approval. The provisions of this plan are now embodied in New Jersey Administrative Code 10:82–12.11. These regulations define "emergency assistance" as "any extra or additional payment(s) authorized in accordance with subsections (b) and (c) of this Section during the period of 30 consecutive days immediately following the occurrence of an emergency as defined in subsection (c) of this Section." § 10:83–12.11(a). Subsection (b) contains certain provisions not relevant to this case. Subsection (c) provides, in pertinent part, that emergency assistance payments may be made "when because of an emergent situation over which they had no control or opportunity to plan in advance, the eligible unit is in a state of homelessness." Subsection (c)(1) further provides that "[w]hen an actual state of homelessness exists or is manifestly imminent, the county welfare board shall authorize payment. . . ."

 The plaintiff contends that the New Jersey regulation illegally deprives her of a right, secured by the federal statute, to receive emergency assistance benefits in her present circumstances. While it is established that the standards of eligibility defined under the federal statute and regulations impose mandatory minimum standards on the states, it is the conclusion of

this court that eligibility standards established by the New Jersey regulations are not in conflict with the standards set out in the federal statute or regulations.

Plaintiff relies upon *Mandley v. Trainor,* 523 F.2d 415 (7th Cir. 1975); *Williams v. Wohlgemuth,* 400 F.Supp. 1309 (E.D.Pa.), affirmed 540 F.2d 163, (3d Cir. 1976), and *Purnell v. Edelman,* 511 F.2d 1248 (7th Cir. 1974), all of which stand for the proposition that states participating in the federal emergency assistance program must at least meet the standards established under federal law.

In *Mandley,* supra, the court held that a state cannot legally limit the availability of emergency benefits to those persons who are otherwise qualified to receive AFDC benefits. Rather, the court held the class of beneficiaries must be as broad as that defined in 42 U.S.C. § 606(e)(1). In the present case, there is no allegation that New Jersey has restricted the class of persons eligible to receive emergency benefits. The allegation here is that New Jersey has illegally restricted the categories of emergencies for which eligible persons are entitled to receive benefits. *Purnell,* supra, and *Williams,* supra, both involved challenges to the definition of "destitution" contained in state plans. While neither of them is directly on point, *Purnell* does closely approximate the factual context of this case. In *Purnell,* the state of Illinois had defined "destitution" to include being without public utility service. However, the state would not provide emergency assistance benefits on this basis unless the eligible person was presently without utilities. The court held that the state must also furnish emergency assistance to prevent the discontinuance of the utility services where such termination is shown to be imminent and otherwise unavoidable.

Unlike the Illinois regulations in question in *Purnell,* supra, the New Jersey regulations here in question do provide for the grant of emergency assistance in order to prevent the destitution of an eligible child. As is provided in § 10:82–12.11(c)(1) of the New Jersey Administrative Code, the county welfare board shall authorize the payment of emergency assistance benefits "[w]hen an actual state of homelessness *exists or is manifestly* imminent. . . ." (Emphasis supplied.) Prior to denying the plaintiff emergency assistance, the county board contacted both the plaintiff's landlord and the utility company and ascertained that no action was then planned either to evict or to terminate utilities services. In these circumstances, there was no "manifestly imminent" state of homelessness as defined in subsection 10:82–12.11(c)(1). To deny benefits in these circumstances comports with the decision of the court in *Purnell,* and is in line with the federal statute and regulations which aim to prevent the destitution of eligible children. To require New Jersey to grant assistance where there is only a remote threat of eviction or discontinuation of utility services would be to go beyond the scope and intent of the federal law.

For the foregoing reasons, the plaintiff's motion for summary judgment will be denied. As this denial disposes of all claims against the defendant Young, the complaint shall be dismissed as to him. Inasmuch as the complaint, as it relates to defendant Riti has been rendered moot, see discussion above at page 569, the entire complaint shall be dismissed.

Defendants to submit appropriate orders.