147 N.J. Super. 124 (1977)
370 A.2d 878
GEORGE BURTON, APPELLANT,
v.
NEW JERSEY DEPARTMENT OF INSTITUTIONS AND AGENCIES, DIVISION OF PUBLIC WELFARE, AND THE PASSAIC COUNTY WELFARE BOARD, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1977.
Decided February 4, 1977.
*125 Before Judges FRITZ, ARD and PRESSLER.
*126 Mr. Lawrence B. Dvores argued the cause for the appellant (Mr. Philip S. Derfler on the brief) (Passaic County Legal Aid Society).
Mr. Richard M. Hluchan, Deputy Attorney General, argued the cause for respondents (William F. Hyland, Attorney General of New Jersey, Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
Mr. Ronald A. Breslow, attorney for the Passaic County Welfare Board, filed a statement in lieu of brief.
The opinion of the court was delivered by PRESSLER, J.A.D.
Petitioner George Burton appeals from a decision of the Division of Public Welfare, Department of Institutions and Agencies (Division), determining that on the facts presented he and his family were not entitled to emergency welfare assistance.
The facts are not disputed. Petitioner, who resides with his wife and six children in Paterson, New Jersey, receives public assistance under the Aid to Families of the Working Poor Program (AFWP), N.J.S.A. 44:13-1 et seq., as well as additional benefits under the Food Stamp Program, 7 U.S.C.A. § 2012(m); N.J.S.A. 30:4B-2. The Food Stamp Program is administered by the issuance, twice a month, of a card, referred to as an ATP card, authorizing the purchase of food stamps for less than their face amount. Petitioner's benefit was the authorization to purchase $149 worth of food coupons for $54.
On April 8, 1976, while petitioner and his wife were on their way to purchase their food stamps, they suddenly realized that her wallet, which contained the ATP card and all of their cash, a sum of $150, was missing. Petitioner reported this loss to the Passaic County Welfare Board (Board) four days later and applied for relief. The Board replaced the ATP card, maintaining the $54 purchase requirement but declined to provide any funds with which *127 stamps might be purchased. A week later, petitioner reported the loss to the local police, and by that time, being without financial resources at all, applied to the Board for emergency assistance in order to obtain food. His application having been denied, petitioner requested review of that action by way of a fair hearing by the Division of Public Welfare. N.J.A.C. 10:81-6.1 et seq. The hearing was held on April 23, 1976. The determination of the hearing officer, adopted by the Director of the Division on April 27, 1976, upheld the action of the Board on the ground that emergency relief in these circumstances was not authorized by regulation. On the following date this court granted the interim relief of ordering the Board to provide petitioner with the sum of $12 a day for food pending his receipt of his next grant payment, which occurred five days later.
The basis of the hearing officer's determination was not her disbelief of petitioner's testimony regarding his wife's loss of her wallet. She, in fact, found that to have been a fact. Nor did she find that the petitioner and his family had any possible resources by which food for this family of eight could be obtained other than by Board assistance. The basis of her decision was, rather, her interpretation of the relevant provisions of the Assistance Standards Handbook, N.J.A.C. 10:82-1.1 et seq., which supplements the Public Assistance Manual, N.J.A.C. 10:81-1.1 et seq. It was her conclusion, first, that the lost money itself could not be replaced by the Board in view of a public assistance manual prohibition of such action, and petitioner does not challenge that determination. What is here challenged was her further determination that the catastrophic plight in which the petitioner and his family found themselves did not constitute a remediable emergency pursuant to the definition of "emergent situation" set forth in N.J.A.C. 10:82-5.12(c), and this for the reason that while petitioner and his wife and six children may have been in imminent danger of starvation, they were nevertheless not "homeless" *128 within the intendment of that regulation. We agree with petitioner and find the Division's construction of N.J.A.C. 10:82-5.12(c) unduly restrictive and, in its literalness, to have violated the clear import of the emergency assistance provision.
There is no question that families receiving AFWP assistance are also eligible for emergency assistance in applicable circumstances. It is further clear that the scope of emergency assistance available pursuant to state regulation must be at least as broad as the emergency assistance authorized by federal enabling legislation pursuant to which the State's AFWP program is administered and pursuant to which it is in part funded. See 42 U.S.C.A. § 603 (a)(5) (providing for equal matching funds for the AFWP program); 42 U.S.C.A. § 606(e)(1) (defining the circumstances pursuant to which needy families with children are entitled to emergency assistance). And see, Gonzales v. Young, 418 F. Supp. 566 (D.N.J. 1976), and Boyd v. Dept. of Inst. and Agencies, 126 N.J. Super. 273 (App. Div. 1974), certif. den., 65 N.J. 281 (1974), finding generally that the emergency assistance provided for by N.J.A.C. 10:82-5.12 is not materially inconsistent with 42 U.S.C.A. § 606(e)(1). See also, affirming the necessity for participating states to conform with minimal federal emergency assistance standards, Williams v. Wohlgemuth, 400 F. Supp. 1309 (E.D. Pa. 1975), aff'd, 540 F.2d 163 (3 Cir.1976).
While we do not suggest that the Assistance Standards Handbook is facially inconsistent with the federal emergency assistance requirements, we are, however, satisfied that the Division's interpretation thereof was. N.J.A.C. 10: 82-5.12(c) provides that emergency assistance shall be provided to families receiving AFWP grant:
When there has been substantial loss of shelter, food, clothing or household furnishing by fire, flood or other similar natural disaster, or when because of an emergent situation over which they had no control or opportunity to plan in advance the eligible unit is in a *129 state of homelessness, and the county welfare board determines that the providing of shelter and/or food and/or emergency clothing and/or minimum essential house furnishings are necessary for health and safety, such needs may be recognized in accordance with the regulations and limitations in the following Sections:
Among the "following Sections" is the provision of an emergency food allowance when food is not available from any other source, in the amount of $1.50 a day per person. It was patently this provision which was the basis for the sum fixed by the emergency order of this court heretofore referred to. The Division concluded that this section was not here applicable because the circumstances did not involve a loss by reason of fire, flood or other similar natural disaster. With that much of its construction of the regulation we agree. It further concluded, however, that the petitioner and his family did not come within the second stated situation, not because there was no emergent situation over which they had no control, nor because they had an opportunity to plan in advance for the emergent situation, but because of the third criterion, namely "homelessness." That is, despite the threat of imminent starvation, the Division concluded that this family was not in a "state of homelessness" simply because the family was not without a roof over its collective head. The Division further relied in this restrictive interpretation of "homelessness" on the definition of "homelessness, state of" set forth in N.J.A.C. 10:82-6.1, namely, "when the physical health and safety of an eligible unit, through no fault of its members, is imperiled by a substantial loss of shelter."
It is, of course, clear that public assistance legislation and implementing regulations must be interpreted in order to accomplish the Legislature's remedial purposes. See, e.g., Pascucci v. Vagott, 71 N.J. 40 (1976). We cannot conceive of the concept of a home as being fully satisfied by a bare floor, four walls and a roof. Rather, we regard having a home as having the minimal resources with which to sustain life in terms not only of bare shelter but also *130 in terms of minimal nutritional requirements and minimal clothing requirements. Indeed, N.J.A.C. 10:82-5.12(c) itself expresses the concern that a family not be left without food and clothing as well as shelter in the narrow sense, irrespective of whether the need for special assistance is the result of a natural disaster or the result of an emergent situation rendering the family homeless. We therefore construe the "homelessness" criterion of the regulation to mean the absence of any of these minimal life-sustaining resources.
Our understanding of the concept of home is not simply a matter of universal common sense and common understanding but is further mandated by the enabling federal legislation. 42 U.S.C.A. § 606(e)(1) requires emergency assistance to needy families with children where a child of the family "is without available resources * * * to avoid destitution * * *" or requires the provision of "* * * living arrangements in a home * * *." Sufficient food to sustain life is both a concomitant of avoiding destitution and an essential component of a living arrangement in a home. There can be no question but that petitioner and his family were homeless to the extent they were without food or money or other resources with which to purchase food.
The Division relies on Gonzalez v. Young, supra, which defined homelessness as either an actual homelessness or an imminent state of homelessness and, consequently, affirmed local action which denied the requested emergency assistance to a family whose available cash was stolen on the ground that the landlord had advised the local welfare board that despite the non-payment of the monthly rent because of the theft, no eviction proceeding would be commenced and the provision of utilities service would not be interrupted. What the Division apparently failed to note in the Gonzalez opinion, however, is that while emergency relief in respect of the rent was not allowed, the local board immediately provided the family with emergency food coupons so they would not go hungry.
*131 We can appreciate the concern of agencies administering public assistance programs in complying with all applicable regulations and mandated guidelines. They are, of course, in a position of public trust and are responsible and accountable for disbursing substantial sums of public funds. They must nevertheless do so consistently with the purpose of the legislation that is being implemented by the regulations and with reasonable appreciation of the common sense demands of the situations with which they are confronted. N.J. Builders, etc., Ass'n v. Blair, 60 N.J. 330, 338-339 (1972).
We are satisfied, however, that the petitioners have already received the relief to which they were entitled, namely, the per diem food allowance pending receipt of their next grant. There is no further relief to which they are now entitled.
The decision of the Division of Public Welfare is reversed.