DAWN DIEGIDIO, PETITIONER-APPELLANT, v. DIVISION OF PUBLIC WELFARE OF THE NEW JERSEY DEPARTMENT OF HUMAN SERVICES, AND BERGEN COUNTY BOARD OF SO-CIAL SERVICES, RESPONDENTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 19, 1986—Decided December 29, 1986.

Before Judges FURMAN, DREIER and STERN.

*Richard S. Semel* argued the cause on behalf of appellant (Bergen County Legal Services, attorney; *Richard S. Semel* on the brief).

*Dennis J. Conklin,* Deputy Attorney General, argued the cause on behalf of respondents (*W. Cary Edwards,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Dennis J. Conklin* on the brief).

*Nancy Goldhill* and *J Harris David* argued the cause *amicus curiae* (Legal Services of New Jersey, attorney; *Nancy Goldhill* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

The Bergen County Board of Social Services denied petitioner's application for emergency assistance pursuant to *N.J.A.C.* 10:82–5.10. After an initial decision and recommendation to the contrary by an Administrative Law Judge (ALJ), the Director of the Division of Public Welfare (Director) in the Department of Human Services affirmed the Board's denial. Petitioner

appeals from the final administrative determination of the Director.

After an emergent fair hearing, the ALJ issued the following findings of facts embodied in her initial decision:

1. The eligible unit consists of four individuals, petitioner and her children, ages 6, 3 and 2 years.

2. Petitioner obtained employment in July 1985; at that time she was receiving AFDC. She advised her income maintenance worker of her employment. The agency felt that she had not reported income and sought [recoupment;] petitioner did not request a fair hearing. Petitioner continued to work.

3. In September 1985, petitioner and her children moved into a trailer with her boyfriend. Both she and her boyfriend were working at the time.

4. The trailer was located in a trailer park. Petitioner and her boyfriend rented the trailer from its owner. At some point, the landlord refused to accept rental payments, indicating that she did not want petitioner and her boyfriend and her children to remain in the trailer. Although petitioner asked her why, the landlord refused to give reasons. Petitioner was eventually evicted on February 3, 1986 for non-payment of rent. Outstanding rent was approximately $800. The landlord was also demanding approximately $400 as a deposit.

5. Petitioner lost her job in December 1985[.] Her boyfriend lost his job several weeks later.

6. Petitioner applied for emergency shelter assistance on June 11, 1986[.] At that time, she and her children had been living in a motel for two weeks. The motel rent was paid until June 13, 1986. Petitioner had no funds at the time of the application, which was denied.

7. Petitioner re-applied for AFDC on February 14, 1986, which application was approved. At the time, petitioner advised the employee who processed the application that it was important to receive her benefits quickly as she needed them to pay storage costs. Petitioner did not receive her first AFDC benefit until at least the 3rd week of March 1986.

8. As of February 14, 1986, petitioner was accepted in a local shelter, at which time she was advised she would be allowed to remain there for three months. She was subsequently given an extension until June 1, 1986. She was required to leave on May 30, 1986 because of an incident involving another resident. The other resident told someone calling petitioner about an apartment that petitioner was not there, when the other resident knew petitioner was waiting for the call. This led to an argument.

9. While at the shelter, petitioner was required to pay $150 per month in food stamps, the amount of her food stamp benefits. She was also receiving AFDC benefits of $418 per month. Petitioner was entitled to benefits of $465 per month, but was subject to a recoupment. As of May 1986, the food stamp benefits were $180 per month.

10. Since May 30, 1986, petitioner and her children had been living in a motel. The rent is $250, which does not include food. The rent is paid through June 13, 1986, and the eligible unit has no where to live after that date.

11. The homeless prevention program, a program in the State Department of Community Affairs, has agreed to provide funds to petitioner for security deposit of up to one and one half months rent, provided petitioner finds an apartment she can afford. They define this as rental of less than $400 per month.

12. While at the trailer and the shelter, petitioner made consistent, intensive efforts to find shelter which she can afford for her children and herself, to know [sic] avail. These efforts have included contacting the homeless prevention program, reviewing newspaper ads and speaking to newspaper employees, contacting numerous individuals associated with both govenment [sic] and private entities, including representatives, contacting on a regular basis an apartment brokerage firm, DYFS, etc. When she initially lost her job in December 1985, prior to the eviction from the trailer, petitioner contacted the homeless prevention program and other organizations, but they were unable to give assistance.

13. Petitioner had been able to save $600 in funds during the past several months[.] However, she had to spend approximately $400 on prior motor vehicle fines and bail relating to them. In addition, because she did not receive her AFDC check quickly in February 1986, petitioner was not able to make payments on the room where she was storing her possessions, including clothes, and lost all possessions. She has therefore in recent months had to buy clothing for herself and her children.

14. Petitioner currently has no funds for payment of rental deposit or security.

Based on those findings, which are not substantially contested on this appeal, the ALJ stated,

I conclude that as of June 11, 1986, there was an imminent state of homelessness because of an emergent situation over which petitioner had no control or opportunity to plan in advance. In addition, I conclude that there is currently an imminent state of homelessness because of an emergent situation over which petitioner had no control or opportunity to plan in advance. Respondent is ordered to provide emergency shelter assistance sufficient to avoid a state of homelessness.

The Director did not take issue with the essential fact finding of the ALJ. Rather, the Director concluded that petitioner was not entitled to emergency shelter assistance by virtue of the governing regulation. The Director's opinion affirming the action of the Bergen County Board reads:

Having reviewed the Initial Decision and any exceptions or replies submitted, I hereby amend the decision of the Administrative Law Judge in the above captioned case as the Final Decision.

The Administrative Law Judge (ALJ) determined the respondent is in a state of homelessness and therefore entitled to emergency shelter assistance.

N.J.A.C. 10:82–5.10 provides for emergency shelter assistance under certain circumstances including when in an emergent situation over which the client

had no control or opportunity to avoid by advanced planning the client is in a state of homelessness. In the instant case the client was evicted from her original home because of nonpayment of rent. Subsequently she lived in a shelter for over three months. She received an AFDC grant and food stamps but was not required to pay rent. While she saved some money she elected to pay motor vehicle fines and related bail. According to testimony gleaned from the fair hearing report petitioner should have been aware of the need to seek and save for housing.

Accordingly, the recommendation of the ALJ cannot be accepted.

The denial of emergency shelter assistance is affirmed.

### *N.J.A.C.* 10:82–5.10 reads in pertinent part:

(c) When there has been substantial loss of shelter, food, clothing, or household furnishings by fire, flood or other similar natural disaster, or when, because of *an emergent situation over which they had no control or opportunity to plan in advance,* the eligible unit is in a state of homelessness and the county welfare agency determines that the providing of shelter and/or food and/or emergency clothing, and/or minimum essential house furnishings are necessary for health and safety, such needs may be recognized in accordance with the regulations and limitations in the following sections:

1. Emergency shelter: When an actual state of homelessness exists or is manifestly imminent, the county welfare agency shall authorize payment of the actual cost of adequate emergency shelter arrangements at the most reasonable rate available, for a specified temporary period not to exceed two calendar months following the month in which the state of homelessness first becomes known to the county welfare agency. (Emphasis added).

On this appeal we must review the record to determine if there is substantial evidence to sustain the Director's determination. Our review must be limited to a review of the Director's decision irrespective of the reasonableness of the decision of the ALJ. *See Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–581 (1980) (review of Civil Service Commission determination following discipline ordered by agency head); *Campbell v. Department of Civil Service,* 39 *N.J.* 556, 562, (1963); *In re Uniform Administrative Procedure Rules,* 90 *N.J.* 85, 90–91 (1982).

We find it unnecessary to interpret the regulation or to decide any question about the validity or interpretation of the regulation in light of the governing statute. Compare *Mayflower Securities Co. v. Bureau of Securities,* 64 *N.J.* 85, 92–93 (1973); *Barone v. Department of Human Services,* 210 *N.J.Super.* 276 (App.Div.1986), certif. granted 104 *N.J.* 461

(1986); *Burrus v. Department of Human Services,* 194 *N.J. Super.* 60 (App.Div.1984). Since an agency's interpretation of regulations it implements are entitled to great deference and the regulations are presumed to be valid and reasonable, see *e.g., Metromedia Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327 (1984); *Bergen Pines Cty. Hosp. v. Department of Human Services,* 96 *N.J.* 456, 477–478 (1984), we will accept for purposes of this appeal the Director's interpretation of the regulation. We nevertheless reverse her decision.

At oral argument the Attorney General, acknowledged that petitioner became homeless in June of 1986, prior to applying for emergency assistance, when a prospective landlord who called petitioner at the shelter where she was living was unable to communicate with her through no fault of petitioner. Petitioner had saved $600 while at the shelter, but as acknowledged by the Attorney General, was required to spend approximately $400 on outstanding motor vehicle fines and related bail in order to avoid a threatened arrest and loss of driving privileges. The Attorney General further acknowledged that petitioner spent the balance of the $600 on clothing for herself and her children to replace items which petitioner was financially unable to reclaim from storage. We believe, that under the circumstances, petitioner qualified for emergency assistance under *N.J.A.C.* 10:82–5.10.

The Director urges that because petitioner was indigent, she did not have to pay the motor vehicle fines because she could not have been arrested in the absence of ability to pay. The issue before us, however, is not whether an indigent can be incarcerated for inability to pay, see *e.g., State v. DeBonis,* 58 *N.J.* 182 (1971), but whether the emergent situation could have been avoided by advance planning of the petitioner. Her belief that she was subject to arrest and loss of license was not unreasonable. In a certification supporting an application for stay she stated

While I was at SOS I was informed that a warrant had been issued for my arrest in Seaside Heights because of unpaid Motor Vehicle fines. I was told

that if I did not pay the fines and bails I would be put in jail, regardless of the fact that I had three children. I did not have an attorney to help me at the time, and I truly believed that I would be jailed, so I took some of the welfare money which I had and paid the $400 demanded.

We cannot conclude that, under the circumstances, petitioner should have avoided making payments ordered by a court on the basis that she could not have been arrested notwithstanding the court's directions, and it is not suggested that the regulation prevented the grant of emergency assistance to petitioner because she violated the motor vehicle laws. Hence, she was entitled to the emergency assistance *Cf. Barrera v. Dept. of Institutions and Agencies*, 150 *N.J.Super.* 41 (App.Div.1977); *Burton v. N.J. Department of Institutions and Agencies*, 147 *N.J.Super.* 124 (App.Div.1977) (construing predecessor to *N.J. A.C.* 10:82–5.10(c)).

The phrase "control or opportunity to plan in advance" embodied in *N.J.A.C.* 10:82–5.10(c) includes not only the obligation but also the capacity to avert a projected emergency before it occurs. Based on the facts which are undisputed in this case, including her loss of employment and inability to obtain housing through no fault of her own, a finding that petitioner had the capacity to avoid the emergency would be arbitrary and unreasonable. There is not the slightest suggestion that petitioner spent her money for any illegitimate or inappropriate purpose after being evicted from the trailer in which she lived and after losing her employment.

The Director contends that affirmance is required because of a limited amount of resources available to fund the emergency assistance program. We have sympathy for the Director's position but note that emergency shelter assistance must be provided in accordance with existing law. Any remedy available to the Director is through the appropriate processes for amending statutes and regulations. As we stated in *Burton v. N.J. Dep't of Institutions and Agencies, supra*, 147 *N.J.Super.* at 131:

We can appreciate the concern of agencies administering public assistance programs in complying with all applicable regulations and mandated guidelines.

They are, of course, in a position of public trust and are responsible and accountable for disbursing substantial sums of public funds. They must nevertheless do so consistently with the purpose of the legislation that is being implemented by the regulations and with reasonable appreciation of the common sense demands of the situations with which they are confronted.

The determination appealed from is reversed because it is arbitrary and unreasonable under the facts. We remand to the Division of Public Welfare for such further proceedings consistent with this opinion as may be necessary to determine the appropriate relief to which petitioner is entitled. We do not retain jurisdiction.